**In re AMES DEPARTMENT STORES, INC., Eastern Retailers Service Corporation, et al., Debtors.**

**AMES DEPARTMENT STORES, INC., et al., Plaintiffs,**

**v.**

**WERTHEIM SCHRODER & CO., INC. and James Harmon, Defendants.**

**Bankruptcy Nos. 90B 11233 through 11285 (JAG). Adv. No. 92–1002A.**

United States Bankruptcy Court, S.D. New York.

Nov. 9, 1993.

Charles E. Talisman, Patton, Boggs & Blow, Washington, DC, for plaintiff.

Lewis A. Kaplan, Paul, Weiss, Rifking, Wharton & Garrison, New York City, for defendants.

### MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Wertheim Schroder, Inc. ("Wertheim"), Defendant in the above-captioned adversary proceeding, has filed two Motions for Partial Summary Judgment, one dated July 13, 1993, and one dated August 23, 1993, on counts eight through eleven of the Ames Department Stores, Inc. ("Ames") complaint. As described below, Wertheim's July 13, 1993 Motion for Partial Summary Judgment is granted as to count eleven of the Ames complaint relating to the Reset Note underwriting spread, and granted as to the amount Ames can recover in count eleven of the Ames complaint for a $400,000 fee paid to Wertheim on April 9, 1990. Wertheim's August 23, 1993 Supplemental Motion for Summary Judgment is denied in its entirety.

### I. BACKGROUND

In May and October 1989, Ames sold to securities underwriters, including Wertheim, two different securities at a discount. The two securities were: (1) Debentures with a principal amount of $155,000,000 sold to the underwriters for $151,706,250 (referred to in counts eight through eleven of the Ames complaint), and; (2) A Reset Note with a principal amount of $200,000,000 sold to the underwriters for $193,100,000 (referred to in count eleven of the Ames complaint). The underwriters then sold the securities to investors at the principal amount, and distributed the difference between the principal amount and the amount the underwriters paid Ames among themselves as their commission. This commission is known as the underwriting spread or the gross spread.

Ames filed a Chapter 11 proceeding on April 25, 1990. On October 13, 1992, Ames brought an eleven count action against Wertheim, four counts of which are relevant to this summary judgment proceeding. In counts eight through ten of its complaint, Ames attempts to recover, under state and

federal fraudulent conveyance law, only the underwriting spread portion of the Debenture sale, alleging that Ames received less than "reasonably equivalent value" for the $3,293,750 underwriting spread associated with the Debenture sale. In count eleven, Ames attempts to recover under 11 U.S.C. § 547, the underwriting spread portion of the Reset Note and Debenture sales, as well as a $400,000 fee paid to Wertheim in April, 1990, alleging that they were transfers "for or on account of an antecedent debt." In response, Wertheim filed two motions for partial summary judgment, one dated July 13, 1993 and one dated August 23, 1993, on counts eight through eleven of the Ames complaint.

## II. MOTION FOR SUMMARY JUDGMENT: STANDARD

■ F.R.B.P. 7056(c) provides "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A motion for summary judgment should be denied if there exists any genuine issue as to any material facts. *In re Join–In Int'l (U.S.A.) Ltd.*, 56 B.R. 555, 558 (Bankr.S.D.N.Y.1986). Accordingly, in the Second Circuit, "the fundamental maxim remains on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues of fact to be tried." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975).

■ The burden of proving the absence of any genuine issue falls on the moving party. *CPY Co. v. Ameriscribe Corp.*, 145 B.R. 131, 134 (Bankr.S.D.N.Y.1992). In determining whether the movant has carried that burden, courts must resolve all doubt in favor of the non-moving party. *Join–In*, 56 B.R. at 558.

In Section III of this Memorandum Opinion, this Court will address Wertheim's July 13, 1993 motion for partial summary judgment on counts eight through eleven of the Ames complaint. In Section IV of this Memorandum Opinion, the Court will address Wertheim's August 23, 1993 supplemental motion for partial summary judgment on counts eight through eleven of the Ames complaint.

## III. WERTHEIM'S JULY 13, 1993 MOTION

There are three components to Wertheim's July 13, 1993 motion for partial summary judgment: (1) Dismissal of counts eight through ten of the Ames complaint relating to the underwriting spread associated with the Debenture sale; (2) Dismissal of count eleven of the Ames complaint relating to the underwriting spreads associated with the Debenture and Reset Note sales, and; (3) Reduction of the amount Ames can recover in count eleven for a $400,000 fee paid by Ames to Wertheim in April, 1990.

### 1. COUNTS EIGHT THROUGH TEN

■ In counts eight through ten of the its complaint relating to the Debenture underwriting spread, Ames asserts federal and state fraudulent conveyance actions. A plaintiff states a federal fraudulent conveyance claim under 11 U.S.C. § 548(a)(2) by alleging that the debtor: (1) transferred property within a year of the filing of the bankruptcy petition; (2) received less than reasonably equivalent value for the property transferred; and (3) was insolvent or became insolvent as a result of the transfer. 11 U.S.C. § 548(a)(2).[1] Wertheim contends that there was not a fraudulent conveyance because: (1) There was no "transfer," and; (2) There was "reasonably equivalent value." These arguments are discussed below.

#### A. Transfer

■ Wertheim maintains that the underwriting spread relating to the Debenture sale in counts eight through ten of the Ames

---

1. This Court need not discuss the components of a fraudulent conveyance claim under New York state law, the elements are almost identical to that of 11 U.S.C. § 548(a)(2). The primary difference is that under New York law the term "fair consideration" is used instead of "reasonably equivalent value." Courts have deemed these terms similar. *See In re Curtina International, Inc.*, 23 B.R. 969, 974 (Bankr.S.D.N.Y. 1982).

complaint was not a "transfer" of property of Ames because the spread was paid by the purchasers of the securities, not by Ames. This Court denies summary judgment on this issue. The legislative history of Section 101(58)[54] of the Bankruptcy Code makes it clear that the definition of the term "transfer" was intended to be as "broad as possible."[2] S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978). Because of this broad definition, this Court is not satisfied that there are no issues of material facts necessary to determine whether the underwriting spread was a transfer.

### B. Reasonably Equivalent Value

■ Wertheim next argues that Ames did receive "reasonably equivalent value" in exchange for its sale of Debentures to Wertheim because Wertheim paid Ames 97.875 cents on the dollar for the Debentures. This Court denies summary judgment on this issue because it is satisfied that in determining reasonably equivalent value courts look to the facts and circumstances surrounding the transfer. *See Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2d Cir.1981); *In re Join–In Int'l. (U.S.A.) Ltd.*, 56 B.R. 555, 560 (Bankr.S.D.N.Y.1986).[3]

### C. The Amount of the Fraudulent Transfer Claim

■ Wertheim also moves for partial summary judgment on the amount Ames can recover in counts eight through ten for the underwriting spread associated with Debenture sale. The total amount of the underwriting spread connected with the Debenture sale was $3,293,750. Wertheim retained $2,374,660 of this amount, and passed the rest on to the other underwriters. Ames asserts that because Wertheim is an "initial transferee" under 11 U.S.C. § 550(a)(1), Ames can recover the full amount of the Debenture sale underwriting spread: $3,293,-750.

The standard for "initial transferee" has been articulated by bankruptcy courts in the Southern District of New York. In *In re Black and Geddes, Inc.*, 59 B.R. 873 (Bankr. S.D.N.Y.1986) the court stated "that an entity that acts as a mere conduit of funds is not an initial transferee within the ambit of Section 550 and no recovery may be had from the entity." *In re Black and Geddes, Inc.*, 59 B.R. at 875, *citing In re Fabric Buys of Jericho, Inc.* 33 B.R. 334 (Bankr.S.D.N.Y. 1983). The record, however, does not provide enough information regarding whether Wertheim was a "mere conduit" or an "initial transferee." Because of this, a material issue of fact remains and summary judgment is denied on this issue.

### 2. COUNT ELEVEN

The second component of Wertheim's July 13, 1993 motion for partial summary judgment concerns count eleven of the Ames complaint. In count eleven, Ames seeks to recover the underwriting spreads from the Reset Note and Debentures, as well as a fee paid to Wertheim, asserting that they are preferences. Section 547 of the Bankruptcy Code provides that a transfer is preferential if the following elements are established:

"(1) ... a transfer of the debtor's interest in property; (2) to or for the benefit of a creditor; (3) on account of the debtor's antecedent debt; (4) made during the 90 day period preceding the debtor's filing for bankruptcy relief, or one year if an insider ..; (5) made at a time when the debtor was insolvent; and (6) enabled the creditor to receive more than it would receive in a chapter 7 liquidation." *In re F & S Cent. Mfg. Corp.*, 53 B.R. 842, 846 (Bankr. E.D.N.Y.1985); 11 U.S.C. § 547(b).

■ For a preference to occur, there must be a transfer that diminishes the debtor's estate. *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 626 (8th Cir.1984). "Where property taken by creditors is not the property of the debtor and the

---

**2.** Transfer is defined in Section 101(58)[54] as: "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property ..."

**3.** This Court need not discuss the third element of a fraudulent conveyance claim—whether Ames was or became insolvent—because Wertheim has not attempted to debate the merits of this point.

transfer does not deplete the debtor's assets, there is no preference." *In re Moskowitz*, 13 B.R. 357, 359 (Bankr.S.D.N.Y.1981) *citing National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912). Wertheim argues that the Ames estate was not diminished because: (1) Ames was reimbursed by Zayre for the underwriting spread associated with the Reset Note [4]; and (2) the sale of the Debentures acted to replace one loan with another (the Debentures) that had better terms, thus effectively covering the cost of the Debenture underwriting spread. I will discuss both arguments.

### A. Reset Note

■ Ames acknowledges that Zayre reimbursed Ames for the $6.9 million underwriting spread associated with the Reset Note. Because this fact is not disputed, the Ames estate was not diminished and this Court grants summary judgment on this part of count eleven relating to the Reset Note underwriting spread. Granting of summary judgment is limited only to the single issue of whether the $6.9 million underwriting spread associated with the Reset Note can be recovered in count eleven of the Ames complaint as a preferential transfer.

### B. Debenture Offering

■ Wertheim argues that the underwriting spread affiliated with the Debenture sale did not diminish the Ames estate because the Debentures had a better rate than the loan that the Debentures replaced, and the better rate covered the amount of the Debenture underwriting spread. Wertheim has not convinced this Court, however, that there are no material issues of fact concerning whether the Ames estate was diminished as a result of the Debenture sale. Therefore, summary judgment is denied as to count eleven of the Ames complaint relating to the Debenture sale underwriting spread.

### 3. ADDITIONAL ASPECT OF COUNT ELEVEN

The third component of Wertheim's July 13, 1993 motion for partial summary judgment concerns a $400,000 fee paid by Ames to Wertheim that Ames is attempting to recover in count eleven as a preferential transfer. Ames concedes, however, that Wertheim refunded to Ames $235,200.54 of that fee. Therefore, Wertheim is entitled to partial summary judgment dismissing the preference claim to the extent that it seeks more than the $164,799.46 balance.

### IV. WERTHEIM'S AUGUST 23, 1993 SUPPLEMENTAL MOTION

■ On August 23, 1993, Wertheim submitted a supplemental motion for partial summary judgment on counts eight through eleven of the Ames complaint. Wertheim argues that the Reset Note and Debenture sales were "settlement payments," and as such are exempt from avoidance as fraudulent conveyance and preferences under eleven U.S.C. § 546(e).[5]

In its complaint, however, Ames is not trying to avoid the transfer of the Reset Note and Debentures, but rather the profit Wertheim made on these sales: i.e. the underwriting spreads. It is not clear whether the definition of "settlement payment" includes a transfer such as this. While courts have defined "settlement payment" broadly, most of those cases dealt with the return of securities or similar consideration from the debtor to another party, not the transfer of

---

**4.** When Ames purchased the Zayre discount stores division, as part of the consideration, Ames issued a $200 million note (The Reset Note) to Zayre. After Ames transferred the note to Wertheim and other underwriters in exchange for $193.1 million in cash, Zayre accepted the $193.1 million as a full release of the principal obligations of the Reset Note, effectively reimbursing Ames for the underwriting spread on the Reset Note offering.

**5.** 11 U.S.C. § 546(e) states in pertinent part: "Notwithstanding sections 544, 545, 547, 548(a)(2) and 548(b) of this title, the trustee may not avoid a transfer that is ... a settlement payment, as defined in section 741(8) ..."

A settlement payment is defined in 11 U.S.C. § 741(8) as: "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade."

**92**

an underwriting spread type fee. *See, e.g., In re Comark,* 971 F.2d 322 (9th Cir.1992) (transfer of GNMA securities by debtor); *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.,* 913 F.2d 846 (10th Cir.1990) (transfer by debtor of cash and preferred stock as consideration in a LBO); *Bevill, Bresler & Schulman Asset Management Corp. v. Spencer Sav. & Loan Asso.,* 878 F.2d 742 (3rd Cir.1989) (transfer of federal government securities by debtor).

Further, Congress enacted 11 U.S.C. § 546(e) "to prevent the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected markets." *Bevill,* 878 F.2d at 747, *quoting* H.Rep. No. 97–420, 97th Cong., 2nd Sess. 1 (1982). Here, such market disruption may not be threatened, and thus it is unclear whether Congress intended this type of transaction to fit under the 11 U.S.C. § 546(e) exception. Because questions exist concerning whether the underwriting spreads paid to Wertheim constituted "settlement payments," Wertheim's supplemental motion for partial summary judgment is denied in its entirety.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052. An appropriate order shall enter.

### ORDER

In accordance with a Memorandum of Decision of even date herewith, it is hereby

ORDERED that Wertheim's July 13, 1993 Motion for Partial Summary Judgment is granted as to count eleven of the Ames complaint relating to the Reset Note underwriting spread, and granted as to the amount Ames can recover in count eleven of the Ames complaint for a $400,000 fee paid to Wertheim on April 9, 1990. Wertheim's August 23, 1993 Supplemental Motion for Summary Judgment is denied in its entirety.