In re CARROZZELLA
& RICHARDSON,
Debtor.

Michael J. Daly, Trustee, Plaintiff,

v.

Anne V. Richardson, Defendant.

No. 95–31231.

United States Bankruptcy Court,
D. Connecticut.

Nov. 20, 2003.

Ira B. Grudberg, Esq., Jacobs, Grudberg, Belt & Dow, New Haven, CT, for Defendant.

## MEMORANDUM OF DECISION ON TRUSTEE'S COMPLAINT FOR AVOIDANCE OF TRANSFERS

ALBERT S. DABROWSKI, Chief Judge.

### I. INTRODUCTION

The present proceeding raises the question of the voidability of a series of payments made by the Debtor to the wife of one of its principals. The Plaintiff–Trustee premises his action on theories of fraudulent conveyance and preferential transfer, under both state and federal law. For the reasons stated in more detail hereafter, a judgment shall enter in favor of the Plaintiff declaring the avoidance of a portion of the subject transfers, and ordering a recovery of the amount of such transfers from the Defendant.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(F) and (H).

### III. FACTUAL BACKGROUND

The Court's factual background is derived from the evidence adduced at trial, certain stipulations of the parties, and the Court's independent examination of the official record of the instant bankruptcy case and adversary proceeding.

Douglas S. Skalka, Esq., Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

The captioned adversary proceeding presents another chapter in the regrettable history of the financial dealings of Attorneys John A. Carrozzella (hereafter, "Carrozzella") and Thomas J. Richardson (hereafter, "Thomas Richardson"). The Court assumes the reader's familiarity with a pattern of fraud perpetrated upon scores of Carrozzella's and Thomas Richardson's clients, and others, over a period spanning two decades. *See generally, e.g., Daly v. Biafore (In re Carrozzella & Richardson)*, 237 B.R. 536 (Bankr.D.Conn. 1999).[1] As a result of such conduct, *inter alia*, on July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against the Debtor, Carrozzella & Richardson (hereafter, the "Firm"), *inter alia*, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly was appointed as trustee of the Debtor's Chapter 7 bankruptcy estate. In the present proceeding the Plaintiff–Trustee seeks to avoid a series of payments made by the Firm to or on behalf of the Defendant, Anne Richardson.

Thomas Richardson and the Defendant (hereafter collectively, the "Richardsons") have been married since 1967. In or about 1978 they purchased residential real property known as and numbered 46 Hintz Drive, Wallingford, Connecticut (hereafter, the "Residence"). At all relevant times prior to 1991, title to the Residence was held in the names of the Richardsons jointly. On November 12, 1991, however, Thomas Richardson quit-claimed his interest in the Residence to the Defendant (hereafter, the "Residential Transfer").

In or about 1986, the Firm was experiencing cash shortages, prompting Carrozzella to request that the Richardsons take out a second mortgage loan (hereafter, the "Second Mortgage") on the Residence, and provide the proceeds (hereafter, the "Mortgage Proceeds") to the Firm. In consideration for the Mortgage Proceeds, the Firm, through Carrozzella, promised to make all Second Mortgage payments on behalf of the Richardsons as such payments came due according to the tenor of the Second Mortgage.

The Richardsons did in fact obtain the Second Mortgage—from Dime Savings Bank (hereafter, "Dime")—and thereafter provided the Mortgage Proceeds to the Firm, which, in consideration therefor, made all regular monthly payments due to Dime under the Second Mortgage. In the four years preceding the Petition Date, payments totaling $18,661.71 were made by the Firm to Dime on behalf of the Defendant (hereafter, the "Indirect Payments").[2] In the one year preceding the bankruptcy Petition Date, payments totaling $4,717.63 were made by the Firm to Dime on behalf of the Defendant (hereafter, the "One–Year Indirect Payments").

The record also indicates that Thomas Richardson was a person who placed personal funds with the Firm for investment.

---

1. Beginning sometime in the late 1980's, Thomas Richardson participated with Carrozzella in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme. As part of that enterprise Carrozzella would solicit funds from clients and others upon the promise of payment of an agreed rate of interest on such deposits.

2. The bulk of the payments made in this timeframe, *i.e.* those after November 12, 1991, were made for the benefit of the Defendant alone, due to the Residential Transfer. Given the nature of the disposition of this proceeding, it is unnecessary for the Court to allocate, as between Thomas Richardson and the Defendant, the benefit of the indirect Payments in the brief period, July 19, 1991 to November 12, 1991.

He apparently deposited a total of $10,000.00 at a time or times not revealed on the record hereof (hereafter, the "Deposit(s)"), and an "investment account" was established at the Firm in his name alone. As of May 6, 1993, the Firm had returned, in various installments, the principal amount of the Deposit(s) to or on behalf of Thomas Richardson alone. In addition to this return of principal, in the four-year period preceding the Petition Date, the Firm paid "interest" on the Deposit(s), via checks made payable to the Richardsons *jointly* [3], in the aggregate amount of $1777.71 (hereafter, the "Direct Payments").

At the time of each of the Direct and Indirect Payments (hereafter, collectively, the "Payments"), the Firm was insolvent.

## IV. DISCUSSION

### A. Fraudulent Transfers.

The Trustee claims that the Direct and Indirect Payments constitute "fraudulent" transfers, and are therefore avoidable by him under state and federal law.

### 1. Federal law.

The Bankruptcy Code provides for the avoidance of "fraudulent" transfers made within the one year preceding the petition date. Specifically, Code Section 548 provides, in relevant part, as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer ... with *actual intent to hinder, delay, or defraud* any entity to which the debtor has or

became, on or after the date that such transfer was made ..., indebted; or

(2)(A) *received less than a reasonably equivalent value in exchange for such transfer* ...; and

(B)(i) was insolvent on the date that such transfer was made ....

\*　　\*　　\*　　\*　　\*　　\*

11 U.S.C. § 548 (1995) (emphasis supplied).

■ The Trustee bears the ultimate burden of persuasion by a preponderance of the evidence on all of the elements of a fraudulent transfer under Section 548(a). However, once a *prima facie* case has been established by the Trustee, a burden of production can shift to the Defendant on certain elements, as detailed below.

### 2. State law.

■ The Bankruptcy Code, Section 544, also permits a trustee to avoid transfers under standards provided by applicable State law—in this case, that of Connecticut. The standards of conduct for transfer avoidance under Connecticut law are not materially different than those under Bankruptcy Code Section 548. Yet state law presents three procedural dimensions which are at variance with those of Section 548. First, state law permits an avoidance claimant to "reach back" four years, not just the single year provided by Section 548. *See* C.G.S. § 52–552j (1995). On the other side of the coin, state law requires a claimant, such as the Plaintiff–Trustee, to meet additional standing requirements, *i.e.* he must enjoy the status of an actual pre-transfer creditor. *See* discussion at subsection IV.A.2.b, below. Finally, under Connecticut law a plaintiff has the additional burden of proving the elements of C.G.S. §§ 52–552e and/or 52–552f

---

**3.** With the exception of minor typographical irregularities, these checks were all drawn to the order of "Thomas J. Richardson and Anne V. Richardson".

by clear and convincing evidence. *See, e.g., Dietter v. Dietter,* 54 Conn.App. 481, 737 A.2d 926 (1999), *cert. denied,* 252 Conn. 906, 743 A.2d 617 (1999).

### a. Substantive law.

Connecticut General Statutes Section 52–552e(a)(1) provides in relevant part as follows:

> A transfer made... by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made and... if the debtor made the transfer... (1) *with actual intent to hinder, delay or defraud* any creditor of the debtor....

(emphasis supplied).

Connecticut General Statutes Section 52–552e(a)(2) provides in relevant part as follows:

> A transfer made... by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made and... if the debtor made the transfer... (2) without receiving a *reasonably equivalent value in exchange for the transfer*... and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(emphasis supplied).

Connecticut General Statutes Section 52–552f(a) provides in relevant part as follows:

> A transfer made... by a debtor is fraudulent as to a creditor whose claim

arose before the transfer was made and... if the debtor made the transfer... without receiving a *reasonably equivalent value in exchange for the transfer*... and the debtor was *insolvent* at that time or the debtor became insolvent as a result of the transfer....

(emphasis supplied).

### b. Standing.

 As is plain from the language of C.G.S. §§ 52–552e and 52–552f, transfer avoidance is available to the Trustee only if he has the status and rights of a "creditor" whose claim "arose before the transfer was made". The Trustee's rights and standing as a "creditor" are found in Bankruptcy Code Section 544, which provides, in relevant part, as follows:

> The trustee may avoid any transfer of an interest of the debtor in property... by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title....

11 U.S.C. § 544(b) (1995). Consequently, under Section 544(b) the Trustee may exercise only the state-law rights of an actual, bona fide unsecured creditor in existence on the Petition Date (hereafter, "Actual Creditor(s)"). Therefore, given the temporal limitations of C.G.S. §§ 52–552e and 52–552f, the Trustee has no "standing" to bring this adversary proceeding unless the record reveals that there was at least one Actual Creditor whose claim arose *prior* to the Payments.[4] *See, e.g., Matter of Leonard,* 125 F.3d 543, 544–545 (7th Cir.1997); *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996).

 The record of this bankruptcy case reveals that there were multiple Actual

---

4. Because Code Section 544(a) confers upon the Trustee the rights, *inter alia,* of a hypothetical creditor *whose claim arose on the Petition Date,* that subsection is not supportive of his standing under Sections 52–552e and 552f.

Creditors whose claims arose prior to July 19, 1991—the date of the first Payment sought to be avoided in this proceeding. The Court takes judicial notice[5] of the several Proofs of Claim on file in this bankruptcy case which assert claims "incurred" prior to July 19, 1991 (hereafter, the "Qualifying Claims").[6] Proofs of Claim on file are "deemed allowed, unless a party in interest... objects." 11 U.S.C. § 502(a) (1995). Because no objections to the Qualifying Claims have yet been filed, they are deemed allowed, and therefore are "allowable" under Code Section 502, as is required by Section 544(b).

### 3. Analysis of Payments.

In the current proceeding there is no material difference in the operative substantive law as between state and federal standards. Thus the subject Payments can be analyzed under state and federal standards in a conjunctive fashion.

#### a. The Indirect Payments.

■ The record of this proceeding is insufficient for the Court to find or conclude, under a "clear and convincing" standard, that the Indirect Payments were made by the Debtor with "actual intent to hinder, delay or defraud" any of its creditors, as required by Bankruptcy Code Section 548(a)(1) or C.G.S. § 52–552e(a)(1). Further, it is clear that the Debtor received "reasonably equivalent value" in exchange for the Indirect Payments within the intendment of Sections 52–552e(a)(2) and 52–552f. "Value" is given in exchange for a transfer only if "property is transferred or an antecedent debt is... satisfied". C.G.S. § 52–552d(a). The Defendant has demonstrated that a debt was created when the Richardsons placed the Mortgage Proceeds with the Firm in ex-

change for the Firm's promise to repay the Mortgage Proceeds, plus interest, via regular installment payments to Dime under the Second Mortgage (hereafter, the "Antecedent Debt"). When the Firm in fact made those payments on the Defendant's behalf, the Antecedent Debt was satisfied to a corresponding degree. Accordingly, the Indirect Payments are not avoidable as fraudulent transfers.

#### b. The Direct Payments.

■ As with the Indirect Payments, the record of this proceeding is insufficient for the Court to find or conclude, under a "clear and convincing" standard, that the Direct Payments were made by the Debtor with "actual intent to hinder, delay or defraud" any of its creditors, as required by Bankruptcy Code Section 548(a)(1) or C.G.S. § 52–552e(a)(1). Nonetheless, because the Defendant has failed to rebut the Plaintiff's *prima facie* case of constructive fraud, the Direct Payments are voidable to the extent they were made for her benefit.

■ In the allocation of production burdens under Bankruptcy Code Section 548(a)(2) and C.G.S. §§ 52–552e(a)(2) and 52–552f, the Defendant has the burden on the element of "reasonably equivalent value"; the Plaintiff need not prove a negative in that respect. Although "value" is given in exchange for a transfer when an antecedent debt is satisfied, here there was no proof of the interest rate, if any, which the Firm agreed to pay the Richardsons in exchange for the Deposit(s). Nor is it apparent from the record that the Defendant was entitled to the Direct Payments at all, since there was no evidence that the Deposit(s) were composed of

---

5. *See* Fed.R.Evid. 201 (1997).

6. *E.g.,* Claim Nos. 3, 5, 9, 13, 21, 23, 25, 38.

funds in which she held an interest.[7] The state of the evidentiary record compels a conclusion that as to the Defendant the Direct Payments were gratuitous. Accordingly, they are avoidable as to her, and recoverable from her under Code Section 550, in the sum of $1777.71.[8]

## B. Preferential Transfers.

 As an alternative to his fraudulent transfer theory on the Indirect Payments, the Plaintiff–Trustee seeks to avoid the One–Year Indirect Payments as "preferential" under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

\* \* \* \* \* \*

11 U.S.C. § 547 (1995). The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer under Section 547(b); and the Defendant must carry the burden of proving any affirmative defenses of Section 547(c). *See* 11 U.S.C. § 547(g) (1995).

 It is beyond contest that the Plaintiff has met his burden as to the elements of Section 547(b). The Defendant was at all relevant times an "insider" and "creditor" of the Firm.[9] The One–Year

---

7. An account was established by the Firm in the name "Thomas Richardson" only.

8. The entire amount is recoverable from the Defendant since she had an undivided interest in the whole of those payments.

9. The Defendant argues that she meets none of the examples of "insider" in Code Section 101(31) (1995) due to the alleged fact that

Thomas Richardson was not a partner of the Firm at the time of the subject transfers. It is unnecessary for the Court to reach the question of Thomas Richardson's partnership status, since even if not a partner, he occupied a position of knowledge and control sufficient to qualify him and his spouse as "insiders". In this respect, it is important to note that Section 101(31)'s list of qualifying relation-

Indirect Transfers were made from the Firm to Dime on behalf of the Defendant [10] on account of the Antecedent Debt within the one year prior to the Petition Date, at a time when, as the Court has previously found, the Firm was insolvent. Finally, the One–Year Indirect Transfers enable the Defendant to receive more than she would receive had those transfers not been made and she received payment on her Antecedent Debt claims in the manner and to the extent provided for under the provisions of the Bankruptcy Code applicable to this Chapter 7 case.

▮ Notwithstanding the Plaintiff's establishment of this *prima facie* case, the Defendant has asserted an "ordinary course of business" affirmative defense under Subsection 547(c)(2). That defense requires the Defendant to establish that the One–Year Indirect Payments were (i) in payment of a debt incurred by the Firm in the ordinary course of business or financial affairs of the Firm and the Defendant; (ii) made in the ordinary course of business or financial affairs of the Firm and the Defendant; *and* (iii) made according to ordinary business terms. Unfortunately for the Defendant, her defense fails on a least two independent grounds.

First, the Defendant offered no evidence to suggest that the Second Mortgage loan transaction was typical of the business of the Firm. Thus she has failed to establish that the Mortgage Indebtedness was "incurred . . . in the ordinary course of business or financial affairs of the debtor" within the meaning of Section 547(c)(2)(A).

Similarly, the Defendant has failed to carry her burden of proof as to "ordinary business terms". In *Lawson v. Ford Motor Company (In re Roblin Industries,*

*Inc.),* 78 F.3d 30, 39–41 (2d Cir.1996), the Second Circuit Court of Appeals made clear that a trial court's assessment of "ordinary business terms" is an objective function, *i.e.* a court must determine what terms are ordinary in a debtor's relevant industry. Here, the Court received no evidence of general borrowing terms and/or practices among law firms or investment companies.

Further, the illicit nature of the Firm's business stands as an impediment to the establishment of an ordinary course of business defense. Courts have held that Congress intended the Section 547(c)(2) preference exception to apply only to transfers by "legitimate business enterprises". *E.g., In re Bullion Reserve of North America,* 836 F.2d 1214, 1219 (9th Cir.1988) (principle applied in the case of a "Ponzi" scheme.).

In light of the foregoing, the Court concludes that the One–Year Indirect Payments are avoidable by the Plaintiff–Trustee under Code Section 547. Under the circumstances of this proceeding, Code Section 550 permits the Trustee to recover the amount of the One–Year Indirect Payments only from the "entity for whose benefit" they were made, *i.e.* the Defendant. 11 U.S.C. §§ 550(a)(1) (1995). Accordingly, a monetary judgment in the amount of $4,717.63 shall enter against the Defendant.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Plaintiff avoiding the Direct Payments and the One–Year Indirect Payments, and providing for a

---

ships is merely suggestive, and is drafted by way of example. Its use of the term "includes" reveals that the definitional examples are not intended to be exhaustive.

**10.** *See* fn. 2

monetary recovery in the aggregate amount of $6,495.34.