In re David BURRY, Debtor.

Gloria M. Satriale, Chapter 7 Trustee for the Estate of David Burry, Plaintiff,

v.

Key Bank USA, N.A., Defendant.

Bankruptcy No. 99–16038.
Adversary No. 01–0475.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 3, 2004.

Robert M. Greenbaum, Saul, Ewing, Remick & Saul LLP, Philadelphia, PA, for Gloria M. Satriale, Plaintiff.

Peter C. Kennedy, Philadelphia, PA, for Key Bank USA, NA, Defendant.

OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

## Introduction

Before the Court is the Defendant's Motion for Summary Judgment. The Trustee opposes the Motion. For the reasons set forth below, the Motion is granted and this adversary proceeding will be dismissed.

## Factual Background

The Trustee has sued Key Bank USA, (the Bank) to recover certain payments received from the Debtor as fraudulent transfers.[1] *See* Amended Complaint. The Bank argues that the transfers are not avoidable because they are installment payments on a loan taken out to finance the purchase of a boat. *See* Motion, ¶ 9. Although the Debtor is not a borrower on the loan, the Bank maintains it was agreed between the borrower (Stillman) and the Debtor that they would share the boat and split the payments as well as any other costs associated with it. *Id.* ¶¶ 8, 10. As to why the Debtor is not a co-borrower, the Bank explains that he had a poor credit history. *See* Affidavit of Stillman, ¶ 4. None of this, however, was known to the Bank when it made the loan. *Id.,* ¶ 10.

The Bank now moves for summary judgment based on the affidavit of Stillman, the loan documents, and copies of canceled checks. These documents, the Bank argues, show it to be a transferee who received payment in good faith and in exchange for value. *See* Bank's Brief. While the Trustee opposes the Motion, she has not filed a response. The Motion was heard on January 20, 2004 after which it was taken under advisement.

## Standard for Summary Judgment

The instant motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.").[2] Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together

---

1. The matter is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

2. Fed.R.Civ.P. 56 is applicable to the instant proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.")

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–252, 106 S.Ct. at 2509–12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–50, 106 S.Ct. at 2509–11. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

*Analysis*

■ The Trustee seeks to avoid and recover these payments under both the Bankruptcy Code's fraudulent transfer provision[3] as well as the Pennsylvania Uniform Fraudulent Transfer Act.[4] The two statutes mirror each other in terms of causes of action[5] and share a common

---

3. 11 U.S.C. § 548

4. 12 P.S. § 5101.

5. Compare the Bankruptcy Code's fraudulent transfer provision:
(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was

affirmative defense which is the basis of the Motion. That defense protects transferees who receive property from the debtor in good faith and in exchange for value:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c). The same provision is found in the PUFTA at 12 P.S. § 5108(d):

> (d) Rights of good faith transferee or obligee.—Notwithstanding voidability of a transfer or an obligation under this chapter, a good faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to:
>
> (1) a lien on or a right to retain any interest in the asset transferred;

incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured, 11 U.S.C. § 548, with the Pennsylvania counterpart:
(a) General rule.-A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) enforcement of any obligation incurred; or

(3) a reduction in the amount of the liability on the judgment.

*Id.; see also id.,* Committee Comment (4)(explaining that § 5108(d) is an adaption of § 548(c)). The two defenses thus require proof of two elements: first, innocence on the part of the transferee, and second, an exchange of value. Raised successfully, these defenses defeat both actual and constructive fraud claims. *See* 5 *Collier on Bankruptcy,* ¶ 548.07[2][a] (Matthew Bender 15th ed. revised 2003) ("To the extent that a transfer is avoidable under section 548, so long as the transferee's 'only liability to the trustee is under this section, and he takes for value and in good faith,' subsection (c) protects the transfer.") As this is an affirmative defense, the Bank bears the burden of proof. *See In re Foxmeyer Corp.,* 286 B.R. 546, 572 (Bankr.D.Del.2002),

*Did the Bank Receive the Payments in Good Faith?*

█ The Bankruptcy Code does not define a "good faith transferee."[6] *In re*

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. 12 P.S. § 5104(a)

**6.** For that matter, neither is there is a definition of "good faith" anywhere in the Bankruptcy Code. Likewise, the legislative history related to section 548(c) never defines, and scarcely addresses, good faith. *See* S Rep. No. 989, 95th Cong., 2d Sess. 89–90 (1978); HR Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), U.S.Code Cong, & Admin.News 1978, 5787, 5875–76, 5963, 6331.

*Kemmer,* 265 B.R. 224, 236 (Bankr. E.D.Ca.2001). *Collier* has observed that because the question of good faith arises in varied circumstances, the term defies an easy or precise definition. *See* 5 *Collier,* ¶ 548.07[2][a]; *In re Roco Corp.,* 701 F.2d 978, 984 (1st Cir.1983) (noting that "good faith" is not susceptible of precise definition). Accordingly, courts generally evaluate good faith defenses on a case-by-case basis. *In re Model Imperial, Inc.,* 250 B.R. 776, 797 (Bankr.S.D.Fla.2000). This requires the court examine what the transferee objectively "knew or should have known," such that a transferee does not act in good faith when it has sufficient knowledge to place it on inquiry notice of the voidability of the transfer. *In re Sherman,* 67 F.3d 1348, 1355 (8th Cir.1995); *see also In re M & L Business Machine Co.,* 84 F.3d 1330, 1335–36 (10th Cir.1996) (stating that "the presence of any circumstance placing the transferee on inquiry as to the financial condition of the transferor may be a contributing factor in depriving the former of any claim to good faith unless investigation actually disclosed no reason to suspect financial embarrassment"); *In re Agricultural Research & Tech. Group,* 916 F.2d 528, 535–36 (9th Cir.1990) (stating that courts look to what the transferee objectively knew or should have known in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint).

■ While the record on this point is thin, what evidence exists favors the Bank. According to Stillman, he never informed the Bank that the Debtor would use the boat or pay towards the loans. Affidavit,

¶ 10. The Trustee might have made something of the fact that half of the checks came from someone other than the obligor on the loan. But having filed no response, the Trustee does not raise this. The Court may thus conclude that the Bank's good faith is established.

*Did the Bank Give Value In Exchange for the Payments?*

■ The Third Circuit has not yet had occasion to articulate the standard for a determinations of "value" under § 548(c). However, one circuit court confronted by the question utilized the standard for determining reasonably equivalent value. *See In re Hannover Corporation,* 310 F.3d 796, 801 (5th Cir.2002). This makes sense given that the definition of value, the term reasonably equivalent value and the good faith defense requiring a tender of value all appear in the same Code section. *See* 11 U.S.C. § 548(a)(1)(B), (c) and (d)(2)(A). At least for the purposes of § 548(c), the Court will test the Bank's defense similarly. But can the same be said for the Bank's PUFTA good faith defense?

■ The Court observes that the operative terms in PUFTA are likewise integrated. Section 5103 defines when "value" is given for a transfer or obligation. *See* 12 P.S. § 5103, Committee Comment (1). The term is understood to have the same meaning as for "reasonably equivalent value" under §§ 5104(a)(2), 5105, and 5108(a) as well as "value" for purposes of the good faith transferee exception under § 5108(d). *Id.* Moreover, both the Code and the PUFTA define the term "value" in almost identical terms.[7] This is not surprising as the

---

7. Under the Code, it "means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). Under the PUFTA it likewise means "property ... transferred or an antecedent debt ... secured or satisfied, but ... does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." 12 P.S. § 5103(a).

PUFTA is a uniform act which derives the term "value" from the Bankruptcy Code. *See id.* Committee Comment (2); *In re Hemstreet,* 258 B.R. 134, 139 (Bankr. W.D.Pa.2001). Given these similarities, this Court will determine if the Bank gave value for purposes of its affirmative defense to the PUFTA claim via a reasonably equivalent value analysis.

 Such a determination is factual in nature. *In re Halpert Company, Inc.,* 254 B.R. 104, 115 (Bankr.N.J.1999). While neither the Code nor the PUFTA define "reasonably equivalent value," ᐧthe Third Circuit Court has provided a thorough analysis of that term. *See In re R.M.L., Inc.,* 92 F.3d 139 (3d Cir.1996). The inquiry is two-fold: first, the court must determine whether the debtor received any value at all in exchange for the transfer. The inquiry in the first step of the analysis is whether the debtor obtained "any benefit ... whether direct or indirect, without regard to the cost of ... services, the contractual and arm's length nature of the relationship, and the good faith of the transferee." *Id.* at 150. According to the Third Circuit Court, this determination involves whether the debtor received any "realizable commercial value" as a result of the transaction. *Id.* at 149, *citing Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 647 (3d Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992). Second, if it is determined that "value" was in fact conferred on the debtor as a result of the transaction, the court must then determine whether that value was reasonably equivalent to the cash transferred by the debtor. In making this assessment, the court may apply a "totality of the circumstances" test. *Id.* at 153. That entails the consideration of a variety of factors, such as the fair market value of the item or service re-ceived compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee. *Id.* at 148.

The Trustee maintains that the Debtor received *less* than reasonably equivalent value in exchange for the monthly payments. Amended Complaint, ¶¶ 12,20. The Bank disagrees but is somewhat vague on the question of what exactly it was that the Debtor received. This is no small matter considering that the Bank bears the burden of proof on the question of value. *See Foxmeyer, supra.* At one point, the property transferred is the use of the boat (Motion, ¶ 10); at another, it is the benefit of the loan proceeds which financed the purchase of the boat. *See* Memorandum, 2. What does the record show as having happened? And what conclusions can be drawn from that?

The record consists of the Stillman affidavit, two installment contracts, and canceled checks from Stillman and the Debtor. Again, it is Stillman's testimony that the boat was purchased for him and the Debtor; that the two agreed that only Stillman should apply for the financing but that both would pay the loan and other costs; that after 18 months they decided on a bigger boat which, in turn, required a bigger loan; and that all the while the Debtor was in fact using the boat and making half of the monthly payments. *See* Affidavit. Both contracts list Stillman and his wife as borrowers. The first stated a monthly payment of $2044.95 commencing March 1996 for 240 months. About 18 months later, Stillman and his wife signed a new contract requiring a monthly payment of $4644.18 for the same number of months. *See* contracts attached to Affidavit. Stillman has attached to the affidavit copies of the monthly payment which he

made; the Bank has attached copies of those made by the Debtor. The checks, albeit incomplete, span the first three years of the loan:

| Date of Payment | Paid by Stillman | Paid by Debtor |
| --- | --- | --- |
| 3/17/96 | $2044.95 | |
| 4/27/96 | $1022.48 | 1022.47 |
| 5/27/96 | $1022.48 | 1022.47 |
| 6/22/96 | $1022.47 | 1022.48 |
| 7/25/96 | | $2044.95 |
| 8/26/96 | | |
| 9/25/96 | | $2044.95 |
| 10/31/96 | | $2044.95 |
| 11/20/96 | | $2044.95 |
| 12/25/96 | | |
| 1/8/97 | | $2044.95 |
| 2/25/97 | | |
| 3/26/97 | | $2044.95 |
| 4/24/97 | $2044.95 | |
| 5/23/97 | $2044.95 | |
| 6/20/97 | $2044.95 | |
| 7/25/97 | | |
| 8/20/97 | $2044.95 | |
| 9/25/97 | | $4644.18 [8] |
| 10/14/97 | $4644.18 | |
| 11/25/97 | | |
| 12/23/97 | | $4644.18 |
| 1/19/98 | | $4644.18 |
| 2/28/98 | $4644.18 | |
| 3/19/98 | $4644.18 | |
| 4/28/98 | $4644.18 | |
| 5/25/98 | | |
| 6/4/98 | | $4644.18 |
| 7/25/98 | | |
| 8/25/98 | | |
| 9/28/98 | $4644.18 | |
| 10/28/98 | | $4644.18 |
| 11/28/98 | $4644.18 | |
| 12/22/98 | | $4644.18 |
| 1/25/99 | $4644.18 | |
| 2/25/99 | | |
| 3/26/99 | $4644.18 | |

The checks reflect that for the 37 month period from March 1996 through March 1999,[9] Stillman and the Debtor made a combined 28 payments. Three payments were split, thirteen were made by Stillman and twelve by the Debtor. Significantly, each check—except, of course, the payments which were split—is in the amount of the monthly payment due the Bank. This corroborates Stillman's statement that he and the Debtor agreed to share the cost of the boat. Again, the Trustee has offered no evidence to refute this or the claim that the Debtor was using the boat. The Court thus concludes from the record that the arrangement is as the Bank has represented it to be: in exchange for making half of the monthly payments, the Debtor was permitted—not by the Bank but, rather, by Stillman—to use the boat. But can the mere "use" of property possessed or held in the name of a third party constitute value in this context?

 Clearly, transfers made solely for the benefit of a third party do not furnish reasonably equivalent value. *See In re Laramie Associates, Ltd.*, 1997 WL 67848 *9 (Bankr.E.D.Pa.). But a transfer on behalf of a third party may produce a benefit that ultimately flows to the debtor, albeit indirectly. *Mellon Bank, N.A. v. Metro Communications*, 945 F.2d at 646. If the indirect benefit constitutes reasonably equivalent value to the debtor, a trustee cannot avoid the transfer as fraudulent. *See id. citing Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979,

8. The increase is due to the new loan for the bigger boat.

9. Six weeks after the last payment, an involuntary bankruptcy petition was filed against the Debtor. *See* Docket, 99–16038

991 (2d Cir.1981). As a leading commentator explains:

> Even though the debtor makes a transfer, or incurs an obligation for consideration that moves (in form or substance) directly to a third person, the debtor nevertheless receives value if she receives an economic benefit **Indirectly** (in form or substance). The consideration need not flow directly to her to satisfy the value component of reasonably equivalent value. Value requires only that the transfer result, whether directly or indirectly, in economic benefit to her. (For example, the debtor gets value though not necessarily reasonably equivalent value) as an indirect beneficiary of economic benefit running directly to someone else where: ... the debtor and the other person share an identity of economic interests so that the debtor got some or all of the direct benefit straightforwardly even though, in form, it passed only to the other person because what benefits one will benefit the other.

Epstein, Nickles & White, *Bankruptcy* § 6–49 at 28–30 (West 1992) (emphasis in original).

Such was the case here. The boat may have been delivered to Stillman from the dealership after the loan was approved but it was the Debtor and Stillman who used it. That explains why both he and the Debtor were paying the Bank. Thus the Court finds that the Debtor received value in exchange for his monthly payments to the Bank.

And such value was reasonably equivalent to what he paid. For eighteen months, the Debtor would share the cost of a boat that had a list of price of $240,000. He would then do the same for another costing $545,000 for nineteen months. But the loan documents indicate more than just the price paid for the boats:

they also reflect that the sales occurred through a dealer and therefore at arms length. That, in turn, allows the Court to conclude that the Debtor and Stillman had agreed to a price equal to market value. *See In re McElroy*, 210 B.R. 833, 835 (Bankr.D.Or.1997) ("The term 'fair market value' reflects the cash price that a willing buyer would pay a willing seller in an arms-length transaction, free of any compulsion or duress."). Given the earlier finding that the Bank acted in good faith, the Court may conclude from all of these circumstances that the Debtor's use of the boat constitutes equivalent value for what he paid the Bank. Accordingly, the Bank has a lien on the payments received from the Debtor thus rendering them not avoidable.