**In re Jose E. GONZALEZ, Debtors.**

**John S. Pereira, Plaintiff,**

**v.**

**Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Defendants.**

**Bankruptcy No. 03–40407 (ALG).**

**Adversary No. 04–04720.**

United States Bankruptcy Court, S.D. New York.

May 19, 2006.

Jaspan Schlesinger Hoffman LLP, by Harold D. Jones, Esq., Garden City, NY, Counsel for Plaintiff.

Schiller & Knapp, LLP, by William B. Schiller, Esq., Latham, NY, Counsel for Defendants.

## MEMORANDUM OF OPINION

ALLAN L. GROPPER, Bankruptcy Judge.

The Chapter 7 Trustee (the "Trustee") of the above-named Debtor brought an adversary proceeding against defendants, Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage Company (collectively, "Wells Fargo"), to recover mortgage payments made by the Debtor as constructive fraudulent transfers under § 548 of the Bankruptcy Code. Before the Court is Wells Fargo's motion for summary judgment and the Trustee's opposition. For the reasons set forth below, the motion is granted.

### Background

Prior to his bankruptcy filing, the Debtor was romantically involved with Karen Amen for a period of years. In November 1998, Karen gave birth to a son, Mateo.

The Debtor has testified under oath that he is Mateo's father and the Trustee has not contested the fact that for years the Debtor has held himself out to be Mateo's father, providing support to the child and spending all of his weekends with Karen and Mateo at Karen's home in Quogue, New York (the "Quogue Property"). (Opp'n. Def.'s Mot. Summ. J., Ex. B, Debtor's Deposition at 5.)

Karen was married to but separated from Louis Amen at the time of the birth. Louis and Karen Amen were obligors on a note executed in favor of Wells Fargo and secured by a mortgage on the Quogue Property. The Debtor was neither an obligor nor guarantor on the note, but over the years he made regular monthly payments to Wells Fargo on the mortgage, which Wells Fargo received and processed in the ordinary course of its business. The Debtor claims that he made the payments to support his son Mateo and because Karen was unable to keep current on the note and could not otherwise provide a proper home for Mateo. *Id.* at 33–34. The Debtor provided additional support for Mateo by writing checks to Karen and vendors for household expenses, childcare and school tuition for Mateo. At no point was the Debtor bound by a formal agreement or court order to provide child support for Mateo. He also maintained a separate residence in New York City. *Id.* at 3.

On February 25, 2003, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On December 13, 2004, the Trustee filed a complaint to avoid and recover mortgage payments in the total amount of $ 41,725.90 made by the Debtor and received by Wells Fargo. In addition to claims under the Bankruptcy Code, which at the time this complaint was filed had a one-year "look-back" period for constructive fraudulent conveyances, the Trustee's initial complaint relied on State

law and § 544(b) of the Bankruptcy Code to challenge payments made up to six years before the petition date. In connection with the present motion, the Trustee withdrew all his claims other than the second cause of action, on which he is seeking to recover $33,365.02 from Wells Fargo as constructive fraudulent transfers under Bankruptcy Code § 548(a)(1)(B).

## Discussion

In accordance with Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Morenz v. Wilson–Coker*, 415 F.3d 230, 234 (2d Cir.2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr.S.D.N.Y.1993). A fact is considered material if it might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. When the court considers a motion for summary judgment, it must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1318 (2nd Cir.1975); see also *Ames Dep't Stores, Inc.*, 161 B.R. at 89. However, a party opposing a motion for summary judgment cannot rest on its pleadings but must provide evidence to support the essential elements of its case. See *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *DePippo v. Kmart Corp.*, 335 B.R. 290, 294–95 (S.D.N.Y.2005), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■■■ The Trustee seeks to recover the mortgage payments made by the Debtor to Wells Fargo as constructive fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code.[1] To succeed on his claim for constructive fraudulent transfer, the trustee must establish the following:

(1) the debtor had an interest in property;

(2) a transfer of that interest occurred within one year of the filing of the bankruptcy petition;

(3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and

(4) the debtor received less than a reasonably equivalent value in exchange for such transfer.

*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556

---

1. 11 U.S.C. § 548(a)(1)(B), prior to the 2005 Amendments, provides in pertinent part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily— (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

(1994) (internal citation omitted). The party asserting a claim for constructive fraudulent transfer bears the burden of proving each of these elements. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L., Inc.)*, 92 F.3d 139, 144 (3rd Cir.1996); *Durso Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.)*, 193 B.R. 682, 696 (Bankr.S.D.N.Y.1996); *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Group, Inc.)*, 232 B.R. 565, 570 (Bankr. N.D.N.Y.1999); *Daly v. Richardson (In re Carrozzella & Richardson)*, 302 B.R. 415, 419 (Bankr.D.Conn.2003).

There is no dispute here as to the first three elements. The parties agree it was the Debtor's money that was paid to Wells Fargo, and the only payments at issue are those made within the year prior to the Debtor's bankruptcy filing. Additionally, there is no dispute that the Debtor was insolvent at the time he made the payments. (Opp'n. Def.'s Mot. Summ. J., Ex. A, Debtor's Aff. at ¶3). The only contested element is the last of the four—whether the Trustee has satisfied his burden of proving that the Debtor did not receive "reasonably equivalent value" for the mortgage payments transferred to Wells Fargo.

 Although the Bankruptcy Code defines "value" for purposes of § 548(d)(2)(A), it does not define the term "reasonably equivalent value."[2] Purely emotional benefits, such as love and affec-

tion, are generally not considered value for purposes of § 548. *In re Treadwell,* 699 F.2d 1050, 1051 (11th Cir.1983) (gifts to children not in the nature of support); see also *Dietz v. St. Edwards Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080 (8th Cir.1997) (release of burden on family member); *In re Guerrera*, 225 B.R. 32, 36 (Bankr.D.Conn.1998) (payment of sister's credit card bill). The purpose of this requirement is to prevent the debtor from depleting the resources of the estate through gratuitous transfers. *Treadwell,* 699 F.2d at 1051. The Trustee argues that he has satisfied his burden of showing that the Debtor did not receive "reasonably equivalent value" in exchange for the mortgage payments by demonstrating that the Debtor was not the legal father of Mateo and, as a consequence, was not "responsible" for Mateo's support.

The Trustee does not contend that if Mateo were legally declared to be the Debtor's son, or if the Debtor were obligated by a court order to provide child support, the mortgage payments would not be avoidable. The Bankruptcy Code recognizes child support obligations as an unavoidable liability and includes a number of provisions that facilitate the collection of spousal and child support claims. Domestic support obligations are nondischargeable in bankruptcy and have recently been elevated to first in priority among unsecured debts pursuant to the 2005 Amendments to the Bankruptcy Code. See 11 U.S.C. §§ 523(a), 507(a).[3] The Bankrupt-

---

**2.** "Value" is defined in § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."

**3.** The 2005 Amendments provide the following definition of "domestic support obligation":

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

cy Code, as amended, offers additional protections to children by, *inter alia,* (i) rendering the failure to pay post-petition domestic support obligations cause for conversion or dismissal (ii) requiring that individual plans of reorganization provide for the payment in full of post-petition domestic support obligations, and (iii) providing exceptions to the automatic stay to permit the commencement or continuation of certain proceedings related to the enforcement of a domestic support obligation. See 11 U.S.C. §§ 362(b)(2)(A), 1112(b)(4)(O), 1129(a)(14), 1208(c), 1225(a)(7), 1307(c)(11), 1325(a)(8). Policies favoring enforcement of support obligations are likewise entrenched in State law, including the New York Family Court Act, which places a support obligation, enforceable by court order, on the parents of a child under the age of twenty-one. See Family Ct. Act §§ 413, 513.

The Trustee contends that such policy considerations do not apply in this case because the Debtor is not the "lawful" father of Mateo. Karen was married to Louis Amen at the time of Mateo's birth, and there is a strong presumption under New York State law that a child born to a married woman was fathered by her then husband. See *In re Findlay,* 253 N.Y. 1, 7, 170 N.E. 471 (1930) (the presumption that the mother's spouse is the father of the child is "one of the strongest and most persuasive known to the law"); *Hanley v. Flanigan,* 104 Misc.2d 698, 700, 428 N.Y.S.2d 865 (N.Y.Fam.Ct.1980). This "presumption of legitimacy" may only be rebutted by clear and convincing evidence that the husband is not the child's biological father, often determined today by the results of medical testing. See *Constance G. v. Herbert Lewis L.,* 119 A.D.2d 209, 212, 506 N.Y.S.2d 111 (2d Dep't 1986); see also *Hanley,* 104 Misc.2d at 700, 428 N.Y.S.2d 865. In this case, the Debtor has never undertaken legal action to have himself declared Mateo's father, and no court has issued an order of paternity or an order directing the Debtor to pay child support. The Trustee argues that the Debtor's admission of paternity is not sufficient to overcome the presumption and that the Debtor therefore received no "economic benefit" attributable to his relationship with Mateo.

The Trustee misapprehends the importance of a formal order of paternity under applicable law. The presumption of paternity is not intended to suppress the truth as to parentage, but to serve the best interest of the child by estopping the mother's husband from denying paternity. *Michelle L. v. Michael L.,* 1 Misc.3d 779, 766 N.Y.S.2d 329, 331 (N.Y.Fam.Ct.2003). Child support obligations in New York are

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

based fundamentally on the fact of parentage. Section 513 of the New York Family Court Act provides that "each parent of a child born out of wedlock is chargeable with the support of such child...." An order of paternity is the manner in which child support obligations are enforced against a recalcitrant biological father. Significantly, however, New York law has long provided that the usual statute of limitations for commencing a paternity proceeding is tolled where the putative father is actually providing support for the child. Family Ct. Act § 517. New York cases also hold that a father's acknowledgement of paternity and history of support are sufficient to rebut the presumption of legitimacy for the purposes of assigning the duty to support. See *Bygland v. Gouse*, 134 N.Y.S.2d 328 (N.Y.Child.Ct.1954), *aff'd* 285 A.D. 1077, 141 N.Y.S.2d 503 (2d Dep't 1955), where admissions corroborated by the assumption of financial obligations served as a basis for overcoming the presumption of legitimacy and a holding putative father liable for the support of the child.[4]

There is no implication in the Bankruptcy Code that the presumption of legitimacy requires this Court to treat Mateo as if he were a stranger to the Debtor and to adopt the bright-line approach advocated by the Trustee—avoidance of all payments in the nature of support if there is no order of paternity in place. Such a rule would place an unreasonable burden on an insolvent debtor to pursue expensive legal remedies rather than devote his modest means to direct support of a child. Moreover, it would unfairly prejudice a party, such as Wells Fargo, that would not even have standing to seek an order of paternity or to force the Debtor to obtain one. Family Ct. Act § 522. Furthermore, the Trustee cannot contend that this Court should require the Debtor to submit to a State paternity proceeding because, under New York law, the Family Court has exclusive original jurisdiction to establish paternity and determine disputes regarding the support of a child. Family Ct. Act §§ 411, 511. Just this month, the Supreme Court confirmed that there is no "probate exception" or "domestic relations exception" to Federal jurisdiction that precludes a bankruptcy court from making appropriate determinations within the scope of its jurisdiction, even if they relate to matters that States have relegated to specialized courts or that involve matters traditionally within State jurisdiction. *Marshall v. Marshall*, — U.S. ——, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); see also *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).[5]

Finally, it is significant in this case that the Trustee has not contended that either the Debtor or Wells Fargo has manufactured an obligation to Mateo in order to defend against an avoidance case. In

---

**4.** An order of paternity is not an adjudication of legitimacy but "is merely a mechanism through which to assign the duty for support" or impose financial responsibility for the child. *Czajak v. Vavonese*, 104 Misc.2d 601, 608, 428 N.Y.S.2d 986 (N.Y.Fam.Ct.1980), quoting Report of Joint Legis. Comm. on Ct. Reorganization No. 2—Family Ct. Act, McKinney's Session Laws of NY, 1962, p. 3446. A paternity order also serves to insure that a child does not become a public ward. *Id.* at 605, 428 N.Y.S.2d 986. New York law also provides that, under certain circumstances, the Commissioner of Social Services can seek support from the person adjudicated the father of the child for purposes of support. *Id.* at 607, 428 N.Y.S.2d 986, citing Social Services Law, § 398 subd 6, pars [d], [e].

**5.** Nevertheless, consistent with this precedent, this Court's determinations regarding support obligations are made for the purpose of deciding this case and do not purport to constitute an order of paternity.

some situations, a Chapter 7 trustee might have reason to challenge a debtor's claim of parentage. In this case, the Debtor openly and for a long period of time acknowledged his paternity of Mateo and held himself out as the child's father. There is no question in this case of an effort by the defendant to fashion a spurious obligation of support as a defense to a suit.

Moreover, under the admitted facts of this case, even if there were no obligation on the part of the Debtor to support Mateo, the Court would find that the Debtor received sufficient value of an economic nature that was "reasonably equivalent" to the payments made to Wells Fargo. In this case, the Debtor admittedly received an economic benefit from the mortgage payments in addition to "psychic" and other intangible benefits that he received from payments that he believed to be made for the benefit of a child.

The record on the motion establishes that the Debtor stayed at the Quogue Property with Karen and Mateo on weekends during the one-year period when the payments at issue were transferred to Wells Fargo. The Debtor's use of the property constitutes a benefit of economic value conferred on the Debtor as a result of the transfer. This factual situation is similar to that in *Satriale v. Key Bank USA, N.A. (In re Burry)*, 309 B.R. 130, 139 (Bankr.E.D.Pa.2004), where the debtor arranged with a friend to purchase a boat solely in the friend's name. The friend purchased the boat by obtaining financing from a bank, and the debtor agreed to pay half the bank debt in exchange for the use of the boat. The debtor had no legal interest in the boat and was not an obligor on the loan from the bank, and the trustee moved to avoid the payments made by the debtor to the bank as fraudulent transfers. The Bankruptcy Court, applying a two-part test enunciated by the Third Circuit in *In re R.M.L., Inc.*, 92 F.3d at 149, found that the debtor's use of the boat constituted value that was equivalent to the monthly payments he made to the bank.[6] The Court explained that "the mere 'use' of property possessed or held in the name of a third party" may be considered value, and that the trustee had failed to refute the fact that the debtor used the boat. *In re Burry*, 309 B.R. at 138. The Court went on to state that the value received by the debtor was reasonably equivalent to the payments transferred to the bank because the loan documents reflected that the sale of the boat was at arms-length, leading to the conclusion that the price of the boat was equal to the market value. *Id.* at 139.

Here, as in *Burry*, there is no question that the Debtor used the property at issue during the relevant time period and that his use of the Quogue Property constitutes economic value. The Debtor also testified that Karen Amen could not make the mortgage payments due under the note.

---

**6.** Under the *R.M.L.* test, a court must first make a factual determination as to whether the debtor received any value at all in exchange for the transfer. *R.M.L.*, 92 F.3d at 149. If the court finds that the debtor received some level of value, the Court must then assess the "totality of the circumstances" to determine whether the value received by the debtor was "reasonably equivalent" to the value it gave. *Id.* This two-part test has been followed by many courts in the Third and other Circuits. See *Am. Tissue, Inc. v. Don-* aldson, 351 F.Supp.2d 79, 106 (S.D.N.Y. 2004); *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212 (3d Cir.2006); *Cohen v. Un–Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 813 (Bankr.E.D.Va.1999). Other courts, while considering the relevant factors, often merge the two-part test into a single inquiry. See e.g., *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 466 (S.D.N.Y. 2001); *Am. Tissue Inc.*, 351 F.Supp.2d at 105.

(Opp'n. Def.'s Mot. Summ. J., Ex. B, Debtor's Deposition at 33–34). Had the Debtor not made the payments, the Debtor would not have been able to use the Quogue Property. Therefore, the Debtor received value, use of the Quogue Property, in exchange for his mortgage payments.

The record is also sufficient to demonstrate that this value is reasonably equivalent to the transfer of mortgage payments under the totality of the circumstances. The "totality of the circumstances" inquiry considers three factors: (i) the fair market value of the economic benefit received by the debtor; (ii) the arms-length nature of the transaction; and (iii) the good faith of the transferee. *R.M.L.*, 92 F.3d at 149. In evaluating the first factor, courts compare the payments made by the debtor with the fair market value of the benefit received. In *BFP*, the Supreme Court noted the importance of fair market value in determining "reasonably equivalent value." *BFP*, 511 U.S. at 545, 114 S.Ct. 1757. If the debtor receives value that is so low that it shocks the conscience, then the transfer is presumptively less than reasonably equivalent value. See *Matter of Long Dev., Inc.*, 211 B.R. 874, 881 (Bankr.W.D.Mich.1995); see also *Mancuso v. Champion (In re Dondi Fin. Corp.)*, 119 B.R. 106, 109 (Bankr. N.D.Tex.1990). However, the fair market value received by the debtor need not be a penny for penny exchange, *In re Euro–Swiss Int'l Corp.*, 33 B.R. 872, 885 (Bankr. S.D.N.Y.1983), but can be "roughly" the value of the transfer made. *Fruehauf Trailer Corp.*, 444 F.3d at 212–13. Like a person who maintains a second home, the Debtor did not have to continuously use the property to realize fair market value from the mortgage payments.[7]

The remaining factors for consideration under the "totality of the circumstances" test include the arms-length nature of the transaction and the good faith of the transferee. The Trustee does not dispute the arms-length nature of the Debtor's payments or the good faith of Wells Fargo. Wells Fargo receives thousands of mortgage payments on a daily basis, and it typically receives mortgage payments through the mail. Wells Fargo did not have any knowledge of the Debtor's financial situation when it received the payments, and it credited the Amens' note for the full value of the payments. There is no question here that Wells Fargo and the Debtor had an arms-length relationship and that Wells Fargo acted in good faith.

In *Christians v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1415 (8th Cir.1996), *vacated,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997), *reaff'd,* 141 F.3d 854 (8th Cir.1998), the Circuit Court rejected the approach of the Bankruptcy Court, agreeing with the Dis-

---

**7.** Courts also recognize that a debtor may receive "reasonably equivalent value" as a direct or indirect benefit from value given to a third party if the consideration for the transfer goes initially to a third party but ultimately confers a benefit on the debtor. See *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981); see also *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646 (3d Cir.1991). The indirect benefit has to be "fairly concrete" to constitute "reasonably equivalent value." *In re Nirvana Rest. Inc.*, 337 B.R. 495, 502 (Bankr.S.D.N.Y.2006); see also *Leibowitz v. Parkway Bank & Trust Co.* *(In re Image Worldwide, Ltd.)*, 139 F.3d 574, 578–79 (7th Cir.1998). Additionally, the benefit received by the debtor must be of some cognizable economic or commercial value in order to be considered "reasonably equivalent value." See *Mellon Bank*, 945 F.2d at 647. The benefit received by the Debtor from the use of the property owned by the Amens satisfies these standards. Since a benefit to a third party often confers a benefit on a debtor, there is no basis to the Trustee's argument that Wells Fargo does not have "standing" to defend against an avoidance action by relying in part on the interests of a third party.

174

trict Court that "the Bankruptcy Court over-emphasized the financial or economic considerations in defining 'value' under § 548," and it noted with approval that "the district court required only that the indirect economic benefit be 'fairly concrete.'" Similarly, in *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 772 (6th Cir.1995), involving money spent legally by a debtor on gambling, the court examined the economics of gambling and also concluded that in considering value in the fraudulent conveyance context, courts should not ignore the "psychic and other intangible values" received by individuals from gambling, just as they would consider the value received by an individual from restaurant or other luxury expenses. In a fraudulent conveyance case, "The Trustee undisputably has the burden of proving the transfers were fraudulent, and this burden never shifts to [the defendant]." *In re Rowanoak Corp.*, 344 F.3d 126, 131–32 (1st Cir.2003); *Fruehauf Trailer Corp.*, 444 F.3d at 217; *Rosen v. Barclays Bank of New York*, 115 B.R. 433, 434 (E.D.N.Y. 1990). On the record on the instant motion, the Trustee has not met his burden of demonstrating that the Debtor did not receive reasonably equivalent value for the payments made to Wells Fargo.[8]

### Conclusion

For the reasons set forth herein, Wells Fargo's motion for summary judgment is granted. Wells Fargo is directed to settle an appropriate order on five days' notice.

---

8. By virtue of this holding, there is no need to reach Wells Fargo's defense under § 548(c).