INTERPOOL, LIMITED, Plaintiff,

v.

CERTAIN FREIGHTS OF the M/V VENTURE STAR, MOSMAN STAR, FJORD STAR, LAKES STAR, LILY STAR, and other vessels operated by the defendants, in rem; Karlander Kangaroo Line; KKL (Kangaroo Line), Pty., Ltd.; Karlander (Australia), Pty., Ltd., and Southern Cross Overseas Agency, Inc., Defendants.

ITEL CONTAINERS INTERNATIONAL CORPORATION, Plaintiff,

v.

KKL (KANGAROO LINE) PTY LIMITED and Karlander Kangaroo Line, in personam, and Freights, Sub-freights and hire for M/V LILY STAR, M/V FJORD STAR and M/V LAKES STAR, in rem, Defendants.

CALIFORNIA CHEMOIL CORPORATION, Plaintiff,

v.

CERTAIN FREIGHTS OF the M/V VENTURE STAR, MOSMAN STAR, FJORD STAR, LAKES STAR, LILY STAR, and other vessels operated by the Defendants, in rem, Karlander Kangaroo Line; KKL (Kangaroo Line), Pty., Ltd., Karlander (Australia), Pty., Ltd., and Southern Cross Overseas Agency, Inc., Defendants.

TRANSMARITIME, INC., and Trafimar S.A., Plaintiffs,

v.

KKL (KANGAROO LINE) PTY LIMITED and Karlander Kangaroo Line, in personam, and freights, sub-freights and hire for M/V VENTURE STAR, MOSMAN STAR, FJORD STAR, LILY STAR, and LAKES STAR, in rem, Defendants.

STEVEDORING SERVICES OF AMERICA, a California corporation, Plaintiff,

v.

The FREIGHTS, SUB-FREIGHTS, AND HIRE FOR M/V VENTURE STAR, M/V FJORD STAR, AND M/V LAKES STAR, in rem, Karlander Kangaroo Line and KKL (Kangaroo Line) Pty. Ltd., in personam, Defendants.

In re Petition of Robert George DUNN, as Liquidator of the Estate of KKL (Kangaroo Line) Pty Limited, Debtor in a Foreign Proceeding.

In re KKL (KANGAROO LINE) PTY LIMITED, a/k/a Karlander Kangaroo Line, Defendants.

ITEL CONTAINERS INTERNATIONAL CORP., Plaintiff,

v.

KKL (KANGAROO LINE) PTY LTD., Defendant.

Civ. A. Nos. 86–149, 86–150, 86–200, 86–299 and 88–2225.
Bankruptcy Nos. 86–01110 C, LA 86–05665–RM.

United States District Court, D. New Jersey.

Oct. 11, 1988.

Donald J. Kennedy, Haight, Gardner, Poor & Havens, New York City, for Liquidator KKL (Kangaroo Line) (Pty. Ltd.).

Harold M. Cohen, Todman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollack, P.C., Hackensack, N.J., for KK Lines.

Kleinberg, Marone, Masterson & Schachter, Millburn, N.J. Chalos, English & Brown, New York City, Fisher, Porter & Kent, Long Beach, Cal., for Interpool Limited.

Robert J. Zaph, Alfred E. Yudes, Jr., Stephen P. Sheehan, Burlingham, Underwood & Lord, New York City, for Itel Containers Intern. Corp.

George J. Koelzer, Ober, Kaler, Grimes & Shriver, Edison, N.J., for plaintiffs.

Reid & Priest, New York City, Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for Stevedoring Services.

Crummy, DelDeo, Dolan, Griffinger & Vecchione, Newark, N.J., for Southern Cross Overseas Agency, Inc.

Eugene J. McDonald, Matawan, N.J., Crowell, Rouse, Varian, Hagen & Matera, New York City, for California Chemoil Corp.

## OPINION AND ORDER

POLITAN, District Judge.

Karlander Australia was a liner company wholly owned by Trygive Vangsnes, Karlander Oslo and Harry Costello. Wah Kwong owned several ship leasing companies in Hong Kong which leased ships first to Karlander and then to KKL (KKL Kangaroo Lines). KKL, organized under the laws of Australia, was started as a liner service in 1981 and was owned at that time by Karlander Australia. In 1983, KKL became an independent company, solely owned by Trygive Vangsnes.

## PROCEDURAL HISTORY

KKL is currently the subject of involuntary liquidation proceedings in Australia filed by Wah Kwong, a creditor of KKL, on January 14, 1986. From the time of filing, KKL has retained property in the United States consisting of various freight monies. There are also existing claims against KKL for trucking services rendered by various United States trucking concerns. In addition, various lien creditors have seized assets of KKL by warrants of arrest and writs of maritime attachment and garnishment.[1] In addition, an arbitration valued at between $3 and $40 million concerning a dispute between KKL and Weyerhauser Co. is still pending.[2] On February 17, 1986, KKL was ordered by the Australian courts to wind up operations and a Liquidator, Mr. Dunn, was appointed by the Australian courts. Mr. Dunn then entered into various agreements with Wah Kwong and its subsidiaries which serve as the basis of this suit.

On February 27, 1986, the Liquidator filed a petition in the Bankruptcy Court of this District for relief pursuant to Section 304 of the Bankruptcy Code, 11 U.S.C. § 304 (1982), for a case ancillary to foreign proceedings. Subsequently, a Chapter 7 Involuntary Petition in Bankruptcy was

---

1. Most of these liens have been resolved by this Court's Order dated April 15, 1988 discussed *infra*, at 375.

2. An Order dated April 22, 1988 directs that any proceeds from this arbitration be deposited in the Court Registry pending further Order of this Court.

filed in the United States Bankruptcy Court, Central District of California, on April 2, 1986, by various petitioning creditors, including JKC, Inc., d/b/a Cool Transportation, Lodi Truck Service, Inc., and California Cartage Co. Inc. The Chapter 7 proceeding was transferred to this Court pursuant to an Order of the United States Bankruptcy Court, Central District of California, on June 19, 1987.

On April 28, 1987, an Interim Order was entered by this Court which provided for the withdrawal of the Section 304 petition from Bankruptcy Court to this Court, enjoined all creditors of KKL from proceeding against the assets of the estate and consolidated all actions pending against KKL in this Court. At the same time, TOBA Adjustments, Inc. was appointed to collect all outstanding freights of KKL in the United States and turn them over to the Court Registry.

The Liquidator has filed three Motions to Dismiss the Chapter 7 proceedings. One was denied on June 19, 1987, by the California Bankruptcy Court (there is some controversy as to whether this included a final order of dismissal, see *infra*, at 376–377), and one was withdrawn by the Liquidator. The third Motion to Dismiss is pending before this Court at the present time.

On April 15, 1988, this Court signed three Orders concerning the distribution of KKL funds held in the Registry of the District Court of New Jersey. The first Order, entitled "Third Interim Order Pursuant to § 304 of the Bankruptcy Code" (Distribution Order), provides for the distribution of funds from the Registry and from TOBA Adjustments, to various lien creditors, including the Liquidator, Stevedoring Services of America, California Chemoil Corp., Itel Containers International Corp., Transmaritime, Inc., and Trafimar, S.A. In exchange for these disbursements, the lien creditors agreed to waive all claims against KKL and the Liquidator. However, they did not agree to waive any claims against Wah Kwong Shipping, Maritime Shipping and Investments Ltd. (MSI), Avonside Shipping Ltd., Kildwick Ltd., Cap-

ital Carriers, Inc., Chainhurst Ltd., Justice Carriers, Inc., Croxford Ltd., Rowley Shipping Ltd., and Concorde Carriers Ltd.

The second Order signed by this Court authorized the Turnover and Distribution of Funds by TOBA Adjustments and allowed payment of a collection fee to TOBA.

The third Order provided for the distribution of funds to be collected from a David K. Toy. These funds are currently being held in the Court Registry of this District.

The remaining issues to be decided by this Court are:

1. Was the Motion to Dismiss the Chapter 7 proceeding previously litigated and denied by the Bankruptcy Court in California so that under § 305 and the doctrines of Law of the Case and *res judicata*, relitigation of the motion is precluded?

2. Should the final § 304 Petition be granted which would recognize the rights of the Liquidator to administer assets located in the United States under the umbrella of Australian bankruptcy law? If not, should a Chapter 7 trustee be appointed to distribute the assets of KKL located in the United States?

On November 26, 1983, KKL executed a "Heads of Agreement", assuming the business of Karlander. KKL also agreed to pay off Karlander's creditors. In turn, Karlander transferred its rights in the Weyerhauser arbitration to KKL in January 1984. KKL received a loan of $6 million from a Wah Kwong subsidiary, and in exchange, KKL assigned its rights in the Weyerhauser arbitration to Wah Kwong. The repayment method to Wah Kwong for this loan was unclear. According to the Heads of Agreement, it was to be on demand. However, according to a letter dated November 26, 1983, repayment was to be by mutual agreement. Again, on January 11, 1984, a letter was sent to KKL from a Wah Kwong subsidiary, stating that unless outstanding debts exceeded $10,122,000, repayment of the loan would be by mutual agreement.

The relationship between Wah Kwong and KKL was described as a joint venture agreement. Wah Kwong corporate individ-

uals were considered to be partners for the purpose of "earnings or distribution of earnings" of KKL. On March 2, 1984, KKL assigned its earnings to Wah Kwong through another Wah Kwong subsidiary. In addition, by letter dated March 3, 1984, the parties agreed to take care to ensure that "day to day liner service operations will be maintained without any interruption." By agreement, dated October 8, 1984, KKL and Wah Kwong agreed to require joint signatures on all KKL checks.

In January 1986, a vessel was arrested in L.A., and Wah Kwong issued a press release saying KKL owed them $10 million. Wah Kwong blocked payments to creditors who in turn shortened their credit terms and forced a shortage of funds from KKL. Soon after, KKL ceased doing business and Wah Kwong also went into receivership.

On May 14, 1986, an agreement ("Deed") was consummated between the Liquidator, KKL, Karlander, and several Wah Kwong subsidiaries which concerned the prospective proceeds of the Weyerhauser arbitration pending in San Francisco, California between Karlander and Weyerhauser Co. (Weyco). Karlander had previously assigned its rights in the arbitration outcome on January 10, 1984 to KKL. KKL, in turn, assigned its rights in the arbitration outcome to a Wah Kwong subsidiary, as security for repayment of the $6 million loan. Under the terms of the "Deed", any proceeds from Weyco claims would be paid to the Liquidator. The Liquidator, in turn, agreed to distribute the first $6 million to a Wah Kwong subsidiary in satisfaction of the loan. Following distribution of some other monies, the rest of the proceeds would be held by the Liquidator for the purposes of administering KKL while in bankruptcy.

A second agreement, dated May 14, 1986, also entitled "Deed", stated that the ship-owners had "suffered damages as a result of a breach by KKL of the terms and conditions of its charters." There is a disagreement as to whether this was true, with KKL asserting that Wah Kwong was in breach by milking it of funds and Wah Kwong asserting that KKL could not meet its obligations and therefore was entitled to the funds. Both "Deeds" were submitted to the Australian Courts and were approved.

I. Motion to Dismiss

■ Section 305(c) of the Bankruptcy Code, 11 U.S.C. § 305(c) (1982), provides:

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

The petitioning creditors assert that § 305(c) applies because the matter was fully litigated in California as evidenced by the Order entered by Judge Ronald Newsome on June 19, 1987, denying the Liquidator's Motion to Dismiss. A review of the record in this matter requires rejection of this assertion. Clearly the Order denied the Motion to Dismiss but did not reach the merits of the Dismissal Motion because Judge Newsome was granting a change of venue.[3] Moreover, the Motion to Dismiss was denied without prejudice. On that basis, § 305(c) does not apply, and this Court is not precluded from deciding the issue.

■ The doctrines of law of the case and *res judicata* also do not apply to the actions of the Bankruptcy Court in this instance. The law of the case doctrine applies "to issues that were actually discussed by the Courts in the prior appeal [and] to issues decided by necessary implication." *Schultz v. Onan Corp.*, 737 F.2d

---

**3.** The order reads: The Court having read and considered the moving papers and the opposition thereto filed by the petitioning creditors, and finding that there was just cause to transfer venue in the within Chapter 7 Involuntary proceeding in order to consolidate same with United States District Court, District of New Jersey, Civil Action No. 86–149 (Judge Alfred J. Lechner, Jr.), it is hereby

ORDERED THAT THE "Motion to Dismiss Involuntary Chapter 7 Petition" is denied;
ORDERED THAT THE "Ex Parte Motion for Change of Venue" is granted.
Dated: June 19, 1987
/s/ Ronald J. Newsome
United States Bankruptcy Judge

339 (3rd Cir.1984) (quoting *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154 (3rd Cir.1980)). It expresses the general practice of refusing to reopen what has already been decided. *See Slotkin v. Citizens Casualty Co. of New York*, 614 F.2d 301 (2d Cir.), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980). Since it is factually clear that the court in California based its decision to deny the Liquidator's Motion to Dismiss the Chapter 7 Petition on its decision to transfer venue and not on the merits of the issue, the law of the case doctrine does not apply.

Moreover, the doctrine of *res judicata* which acts to bar relitigation of claims that have previously been decided is also inapplicable. The Order of June 19, 1987 was simply to transfer the case to this Court and purely ministerial in function and effect. *See Birge v. Delta Airlines, Inc.*, 597 F.Supp. 448 (N.D.Ga.1984). Thus, in the case at bar, the only final determination that this Court recognizes is that of a change of venue. There has not been a final determination of the Liquidator's Motion to Dismiss the Chapter 7 Proceeding.

II. Status of Case Ancillary to Foreign Proceeding.

■ Section 304 of the Bankruptcy Code governs cases filed in the Bankruptcy Courts that are ancillary to foreign proceedings. If the Court permits, § 304 allows an administrator (or liquidator) to administer assets located in this country and prevents dismemberment by local creditors of assets located here. *See* 11 U.S.C.A. § 304, Historical and Revision Notes at 225 (West 1979). Whether the Court grants ancillary jurisdiction depends on the factors enumerated in § 304(c) which include assurance of economical and expeditious administration of the estate; just treatment of all claim holders; protection of United States claim holders against prejudice and inconvenience in the processing of claims in such foreign proceedings; prevention of preferential or fraudulent dispositions of property, distribution of proceeds substantially in accord with the order prescribed in the Bankruptcy Code; and comity.

Comity is often considered the most significant factor of § 304 when it serves as the crux of the debtor's argument. *See In re Gee*, 53 B.R. 891, 901 (Bkrtcy.S.D.N.Y. 1985). Comity has been defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Comity is granted to the decision or judgment of a foreign court

"[i]f it is shown that the foreign court is a court of competent jurisdiction and that the laws and public policy of the foreign state and the rights of its residents will not be violated. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect."

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). In order for comity to be extended, the foreign court must abide by fundamental standards of procedural fairness. *See Cunard S.S. Co. v. Salen Reefer Services A.B.*, 773 F.2d 452 (2d Cir.1985). "The rationale underlying the granting of comity to a final foreign judgment is that litigation should end after the parties have had an opportunity to present their cases fully and fairly to a court of competent jurisdiction." *Id.* at 457–58. American courts have tried to accommodate the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.

In the case at bar, the decision whether to grant comity to the actions of the Australian Court must be determined in light of:

a) whether the United States creditors have the ability to pursue their rights in Australian courts; and

b) whether there is enough parity in the essence of the Australian Bankruptcy Rules so that United States creditors will be similarly protected in both jurisdictions.

#### (a) *Pursuit of Claims*

United States creditors do have a right to pursue their claims in Australian courts. According to § 413 of the *Companies Code of Australia* (hereinafter Code), the Liquidator, or *any creditor* may apply to the court

"a) to determine any questions arising in the winding up of a company; or

b) to exercise all or any of the powers that the court might exercise if the company were being wound up by the court."

Additionally, if creditors feel that the Liquidator has not "faithfully performed" his duties, or has not observed a requirement of the Code, they may complain to the Court, and the Court may inquire into the matter and take such action as it sees fit. *See* Code § 420(1). The Court may require that the Liquidator answer any inquiry in relation to the winding up and may direct an examination of the Liquidator. *See* Code § 420(3). Additionally, the Court has independent powers to direct the Liquidator to lodge a report with respect to any matter. *See* Code § 418(2). It would seem, therefore, that access to Australian courts relating to actions of the Liquidator is not restricted.

However, from the briefs, affidavits and testimony of the Liquidator, it appears that the creditors would not have an opportunity in Australia to petition the Australian Court to set aside the Liquidator's actions in ratifying the agreement between the Liquidator and Wah Kwong. It appears from the record that winding up proceedings are essentially *ex parte* proceedings in Australia, and as such, do not provide the same recourse as do our Bankruptcy Rules. Protection of United States creditors is of utmost importance to this Court. Actions taken by a foreign court in a foreign bankruptcy are to be given deference if, and only if, there would be no substantial violation of the law that would be applied in the United States. *See In re Toga Manufacturing, Ltd.*, 28 B.R. 165 (Bkrtcy.E.D.Mich. 1983) (ancillary petition not granted because the priority of claims in Canada is different than in the United States); *In re Matter of Culmer*, 25 B.R. 621 (Bkrtcy.S.

D.N.Y.1982) (ancillary relief granted where the court found that foreign proceeding was conducted in an inherently fair and regular manner); *see also Cunard S.S. Co. v. Salen Reefer Services A.B.*, 773 F.2d 452 (2d Cir.1985) (comity granted because the creditors would receive essential due process considerations in the adjudication of their claims); *In re Metzeler*, 78 B.R. 674 (Bkrtcy.S.D.N.Y.1987) (ancillary petition granted because German law essentially and in its important aspects similar to U.S. Bankruptcy Code).

Thus, while access to the Australian tribunal appears to be a clear right under Australian law, the question remains as to whether, on a parity of litigation level, these claims can be presented and adjudicated by the Australian Court, and be consistent with the procedural and substantive teachings of the United States Bankruptcy Code.

#### (b) *Parity of Law*

There is no requirement that Australian law and United States law be identical. *See In re Gee*, 53 B.R. 891 (Bkrtcy.S.D.N.Y.1985). However, before a § 304 Petition may be granted, this Court must be convinced that the foreign Court has or will abide by fundamental standards of procedural fairness. *See Id.* 902; *Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B.*, 773 F.2d 452, 457 (2d Cir.1985). Additionally, our Bankruptcy Code requires that "just treatment be accorded United States creditors and that fraudulent dispositions of property be prevented." 11 U.S.C.A. § 304(c)(1) and (4) (1982).

Procedural protections provided in the Bankruptcy Code are considered of paramount importance. One such protection requires that creditors be notified prior to the institutionalization of agreements between the trustee and any of the creditors. *See Rules of Bankruptcy Procedure*, Rule 2002(a)(5). Giving notice to creditors is jurisdictional and neither the creditor nor the bankrupt is required to show harm or lack thereof before this notice is required. *See In re Stilwell*, 120 F.2d 194 (2d Cir.1941). Another provision requires the trustee and the creditors to hold a series of meetings

concerning the liquidation of assets in the debtor's estate.

Under Australian law, bankruptcy proceedings result in private determination of the bankrupt and there is no estate created as is the case here. Matters are dealt with in a completely different fashion, and notice is not required. "There is no provision in any of the Code, the Regulations promulgated under the Code or the Rules of the Supreme Court of New South Wales which require a liquidator to give notice". Affidavit of Richard K. Fisher, dated March 30, 1988, p. 5. Additionally, while a creditor may call a meeting, that creditor would have to know of the proceedings before making such a request.

Since, in this case, the creditors were not notified prior to the date the Court ratified the agreement between the Liquidator and Wah Kwong, and in addition, were not notified of the original § 304 filing, this Court finds that the procedural protections available to creditors in the United States were not given to the United States creditors in Australia. This is a serious omission.

In addition, the substantive remedy of equitable subordination is available in the United States. It is not, however, available under Australian law. The concept of equitable subordination is codified in our Bankruptcy Code under § 510(c). Its purpose is to "undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of bankruptcy results." *Matter of W.T. Grant Co.*, 4 B.R. 53, 74 (Bkrtcy.S.D.N.Y.1980) (citing *In re Kansas City Journal–Post Co.*, 144 F.2d 791 (8th Cir.1944)). The importance to creditors of this doctrine cannot be underestimated, as it is used for the prevention of fraud or inequitable conduct. *See In re Americana Apparel, Inc.*, 55 B.R. 160, 162 (Bkrtcy.E. D.Pa.1985).

United States Courts have both the power and the duty to sift through the circumstances surrounding any claims to see that justice is done in the administration of bankrupt estates. *See In re Multiponics, Inc.*, 622 F.2d 709 (5th Cir.1980). The Court must look to whether the transaction being scrutinized was entered into in good faith, and not with a view to the sole benefit of one creditor. *See Id.* In using the equitable power of the Court, the burden is on the trustee to come forward with substantiation of the unfairness of the claim. *See Westgate–California Corp. v. First National Finance Corp.*, 650 F.2d 1040 (9th Cir.1981).

If the debtor is a corporation, claims of insiders may be subordinated on a lesser showing of fraud than those of arms-length creditors. *See Matter of W.T. Grant Co.*, 4 B.R. at 74; *In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir.1986). *In re Bellanca Aircraft Corp.*, 56 B.R. 339 (Bkrtcy.D. Minn.1985), *aff'd in part and remanded in part, In re Bellanca Aircraft Corp.*, 850 F.2d 1275 (8th Cir.1988). An insider is defined in the Code as a director, officer, person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor or relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. § 101(25)(B) (1982).

The doctrine of equitable subordination is a powerful tool to correct and modify any wrongdoings perpetuated on the bankrupt debtor by those in a position to influence or obtain special favors. *See In re Multiponics, Inc.*, 622 F.2d 709, 714 (5th Cir.1980). The Court will look to unconscionable use of insider status and influence in its determination. A finding of unfair advantage to the claimant may suffice to call forward the use of equitable subordination. *See id.*

It is clear from the testimony of the Liquidator's attorney and from the Australian case law reviewed by this Court, that the doctrine of equitable subordination does not exist in *anywhere close to the same form* as that found in the United States Bankruptcy Code.[4] Nor is there any comparable procedure under Australian

---

4. The Liquidator's actions are subject to scrutiny under Australian law, *see* § 420 of Companies Code, but the issue before this Court does not focus on the misfeasance of the Liquidator. Rather, the focus is on the protection of United States creditors under Australian law.

law, no matter what it is entitled.[5] The case law does not reveal the Australian Court's inherent power to equitably subordinate on its own motion or in response to the motion of the trustee, or most importantly, a creditor, any claims which have been paid or presented and approved for payment by inside creditors. Australian law does not require nor disallow creditor subordination on this basis. Rather, the cases cited by the Liquidator deal only with situations in which there is a prior contract between creditors, or between creditors and the liquidated company that would have required subordination of one creditor's interest to those of the other creditors.

While I do not hold that equitable subordination should be invoked in this case since the substantive issue was not argued before this Court, a trustee in Bankruptcy must consider this issue. The Court is not satisfied that the Australian cases cited by the Liquidator set precedent for the type of situation which is now presented to the Court. Wah Kwong's loan was made payable either on demand or by mutual agreement; Wah Kwong's president sat on the Board of Directors of KKL; and someone from Wah Kwong was required to co-sign checks prior to issuance. Additionally, it was Wah Kwong who allegedly overdrew on monies held by KKL which hampered its ability to pay creditors and led to the involuntary petition being brought against KKL. On its face there appear to be substantial allegations of insider machinations which would require that a court consider equitable subordination. The lack of procedural redress in the first instance and substantive redress in the second instance could significantly affect creditors' rights and chances for a fair settlement of their grievances and claims against the Australian company.

Both the laws and the public policy of the United States will be violated if the case is permitted to proceed under Australian law. The claims of the creditors may have already been prejudiced by the dealings between the Liquidator and Wah Kwong, and this Court does not intend to stand idly by while United States' citizens and creditors are harmed. The Court rejects the contention voiced by the Liquidator, that the denial of the § 304 petition would result in a rule that no foreign liquidator could ever enter into a binding agreement as being idle jargon. Foreign trustees will be able to enter into any type of agreements as long as United States law, notions of due process, and equitable treatment of creditors are followed in a similar fashion in foreign jurisdictions.

In view of the foregoing, this Court holds that the § 304 petition should not be granted and the motion for a Chapter 7 Petition should be granted and an Order for Relief entered. All of the assets located in the United States, including, but not limited to the proceeds of the Weyco claims, shall be considered part of the bankrupt estate and be administered under the laws of the United States Bankruptcy Code.

This matter is transferred to the United States Trustee and it is hereby ORDERED that the United States Trustee appoint an Interim Trustee forthwith. This Court withdraws the reference in this matter, and

5. It is contended that the agreement ("Deed") made by the Liquidator which promised Wah Kwong a superior right to the first $6 million of the Weyco arbitration, should be considered in the context of the preference rationales. Under § 547(b), preferences may be avoided which have been made to or for the benefit of the creditor; for an antecedent debt owed by debtor before transfer was made; made while debtor was insolvent; made within either 90 days or one year before the date of filing the petition. Likewise, under Australian law, preferences are voidable. *See* Code § 451(1)(2).

A trustee under the Bankruptcy Code acts as an independent, separate legal entity from the debtor. *See In re Bildisco*, 682 F.2d 72, 82–83 (3rd Cir.1982). As such, the preference section of the Bankruptcy Code does not apply to his actions. Rather, it applies to actions between the debtor and the creditor. Therefore, it is clear that the Wah Kwong agreement cannot, and should not be measured by preference standards. As such, the remedies provided for in the Australian Code concerning preference transactions are inapposite.

will retain jurisdiction as to all future proceedings.

SO ORDERED.