**In re PETITION OF Karl WÜTHRICH, as Temporary Trustee of Swissair, Swiss Air Transport Co., Ltd., SAirGroup AG, SAirLines AG, Flightlease AG, Swisscargo AG, and Cargologic AG, Debtors in a Foreign Proceeding.**

No. 01–42536(SMB).

United States Bankruptcy Court, S.D. New York.

Jan. 24, 2006.

Steptoe & Johnson LLP, Greg R. Yates, William Karas, George R. Calhoun, V, of Counsel, New York City, for petitioner.

Morgan, Lewis & Bockius LLP, J. Kevin Fee, Esq., of Counsel, Washington, DC, for petitioner.

Condon & Forsyth LLP, Thomas J. Whalen, Evelyn D. Sahr, James G. Ehrig, of Counsel, Washington, DC, for Swiss International Air Lines Ltd.

## MEMORANDUM DECISION DENYING MOTION FOR INJUNCTIVE RELIEF

STUART M. BERNSTEIN, Chief Judge.

The debtors in this foreign proceeding (collectively, "SAirGroup") formerly operated SwissAir, an international commercial airline. Swiss International Air Lines Ltd. ("SIAL") purchased the flight operations of SAirGroup, and recently commenced a proceeding before the United States Patent & Trademark Office ("USPTO") to cancel SAirGroup's registration of the SWISSAIR trademark (the "Mark"). Karl Wüthrich, the temporary trustee (the "Trustee") of SAirGroup, filed a motion to enjoin that proceeding.

The Court conducted an evidentiary hearing during which it heard the testimony of one live witness, and by agreement of the parties, received the affidavits of two other witnesses. Based upon the evidence adduced at the hearing, and for the reasons set forth below, the Trustee's motion is denied.

### BACKGROUND

Unless otherwise stated, the facts material to the current contest are not in dispute. As noted, SAirGroup operated SwissAir, a world-wide commercial airline, for many years. Its operations included flights between Switzerland and the United States. SAirGroup registered the Mark with the United States Patent Office in 1961, (Hearing Exhibit 2), and last renewed the registration in October 2001. (*Id.*)

On or about October 4, 2001, SAirGroup commenced a foreign proceeding in Switzerland, and the Swiss court appointed Wüthrich as temporary trustee. On October 9, 2001, the Trustee commenced this ancillary proceeding under 11 U.S.C. § 304. On June 20, 2003, the Swiss court approved SAirGroup's "debt restructuring agreement," the equivalent, in this case, of a liquidating chapter 11 plan. (*Supplemental Declaration [of Karl Wüthrich in] Support of Motion for an Order Granting Renewed Injunction*, undated, at ¶ 2)("*Supplemental Declaration*")(ECF Doc. # 90.)

## A. The Sale of Assets

Since October 2001, SAirGroup or the Trustee have been involved in the process of liquidating SAirGroup's assets, including the Mark. In early October 2001, SAirGroup entered into an agreement to sell its flight operations to Crossair. (Hearing transcript, dated Dec. 6, 2005, at 20)("Tr.")(ECF Doc. # 94.) The transfer was complete by March 30, 2002, Crossair changed its name to SIAL, and SAirGroup has not operated any flights since then. (*See id.*) SIAL has taken over those operations, and currently operates a fleet of 75 aircrafts serving 70 destinations, including several cities in the United States. (*Rebuttal Affidavit [of Dr. Stephan Frey] in Support of Opposition to Motion of the Petitioner for an Order Granting a Renewed Preliminary Injunction*, sworn to Jan. 9, 2006, at ¶ 5)("*Rebuttal Affidavit*")(ECF Doc. # 91.)

The Mark was excluded from the sale, but as part of the transaction, SIAL obtained an option to purchase SAirGroup's worldwide rights to the Mark. (Tr. 20–21; Hearing Exhibit 3.) The purchase price was to be determined by an independent appraiser. Pursuant to an appraisal dated November 29, 2001, the Mark was valued at 660 million Swiss francs, or approximately $500 million. (Tr. 22–23; Hearing Exhibit 4.)

SIAL declined to exercise the option, and SAirGroup or the Trustee have been trying to sell the Mark ever since. The Trustee retained a broker to sell the Mark in 2003, and is currently negotiating an agreement with a second broker. (Tr. at 29–30.) In August 2005, the Trustee received an offer of 5 million Swiss francs, or approximately $4 million, for the Mark. This is the only pending offer. (Tr. at 39.)

The apparent drop in value suggests that the Mark is a wasting asset. In fact, it is on the verge of wasting away. Under Swiss law, SAirGroup's rights in the Mark may be deemed abandoned on March 30, 2007—five years after the cessation of flight operations—if it has not sold by then. (*Supplemental Declaration*, at ¶ 6.)

## B. The Dispute With SIAL and This Motion

Although SIAL declined to exercise the option, it appears that it has sought to register rights in the Mark, or in a similar mark, in Switzerland. Between November 28, 2002 and August 6, 2004, SAirGroup filed 20 oppositions to the registration of trademarks by SIAL with the Swiss Federal Institute of Intellectual Property. (*Rebuttal Affidavit*, at ¶ 2.) In a decision dated February 25, 2005, the Institute rejected SAirGroup's opposition on the ground that "Swiss" indicated an origin, and that there was no likelihood of confusion between the two marks. (*Id.*, at ¶ 3.) SAirGroup has appealed that decision. (*Id.*, at ¶ 2.)

After this Court's preliminary injunction terminated in June, SIAL filed a petition, dated Sept. 13, 2005 (the "Petition")(*see* Hearing Exhibit 5), with the USPTO to

cancel the Mark registered to SAirGroup.[1] The Petition relied on the statutory presumption that a trademark is deemed to be abandoned if it is not used for three years. (*Id.* at 3.) The Trustee learned about the Petition after some delay, and immediately sought to reinstate the preliminary injunction to "permit the Petitioner to continue in his efforts to realize the value of the mark unimpeded by SIAL's self-serving effort to usurp the Debtors' valuable intellectual property." (*Motion of the Petitioner for an Order Granting a Renewed Preliminary Injunction,* undated, at 10)(ECF Doc. # 84.) The Court granted a preliminary injunction with SIAL's consent following the initial hearing on December 6, 2005, and continued the injunction pending the determination of this motion. (*Preliminary Injunction Order,* dated Jan. 12, 2006)(ECF Doc. # 92.)

## DISCUSSION

### A. The Nature of the Relief Sought

■ Before addressing the motion, it is necessary to consider the nature of the relief requested. The Trustee seeks to *preliminarily* enjoin the Petition litigation to allow him to sell the Mark. Although the motion implies a future hearing for permanent injunctive relief, the Court does not foresee further proceedings regarding whether to enjoin the prosecution of the Petition. The record is complete, and the injunction, if granted, will remain in place until it becomes moot because the Trustee sells the Mark (and the Petition becomes the buyer's problem) or abandons his sale efforts.

■ Where the Court enjoins a litigation and does not contemplate a further proceeding on whether to enjoin that litigation, the injunctive relief is permanent rather than preliminary. *See Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.),* 932 F.2d 147, 151 (2d Cir. 1991). Accordingly, the Trustee is seeking a permanent injunction of indefinite but limited duration pending the sale or other disposition of SAirGroup's interest in the Mark.[2]

### B. The Availability of Relief Under § 304(b)

Subject to the provisions of § 304(c) of the Bankruptcy Code,[3] a court may enjoin the commencement or continuation of an action "against a debtor with respect to property involved in such foreign proceeding." 11 U.S.C. § 304(b)(1). Section 304(c) provides:

> In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—
>
> (1) just treatment of all holders of claims against or interests in such estate;
>
> (2) protection of claim holders in the United States against prejudice and in-

---

1. SIAL had previously attempted to file applications for its own trademarks with the USP-TO, but the applications were denied because of the likelihood of confusion with the Mark. (Petition at 2.)

2. Even if the injunction request is viewed as preliminary, the Trustee is still not entitled to relief under 11 U.S.C. § 304(b) for the reasons discussed in the succeeding text.

3. Section 304 was repealed by § 802 of the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub.L. 109–8, and replaced by chapter 15. Section 304 continues to apply to cases commenced prior to the October 17, 2005 effective date.

convenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

■■■ Although listed as one of several factors, "comity is the ultimate consideration in determining whether to provide relief under § 304 .... [A] court's function under § 304 is to determine whether comity should be extended to the foreign proceeding in light of the other factors." *Bank of New York v. Treco (In re Treco)*, 240 F.3d 148, 156 (2d Cir.2001).[4] Yet comity is not implicated by every question presented in a § 304 proceeding. In particular, "U.S. courts may resolve *bona fide* questions of property ownership arising under local law while a foreign bankruptcy proceeding is ongoing without deferring to the parallel foreign proceeding on grounds of international comity." *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 426 (2d Cir.2005); *see Koreag, Controle et Revision S.A. v. Refco F/X Assocs. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 348 (2d Cir.)(§ 304(b)(2) "presupposes an antecedent determination of property interests as a condition to the turnover of property to a foreign representative"), *cert. denied*, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132

(1992). In short, the United States court should first decide whether the foreign estate has any interest in local property before granting relief under § 304(b) with respect to that property. *JP Morgan Chase Bank*, 412 F.3d at 426 (court must resolve "threshold" question of property ownership before granting relief under § 304(b)(1)); *Koreag*, 961 F.2d at 349 ("[B]efore a particular property may be turned over pursuant to § 304(b)(2), a bankruptcy court should apply local law to determine that the debtor has a valid ownership interest in the property when the issue is properly posed by an adverse claimant.")

■■■ It follows that a foreign representative should not be entitled to a § 304(b) injunction to prevent the determination of the very dispute that must be resolved before he is entitled to § 304(b) relief. Yet this is precisely what the Trustee seeks to do. SAirGroup's interest in the Mark is the subject of a *bona fide* dispute under United States law. Section 45 of the Lanham Act, 15 U.S.C. § 1127, states, in pertinent part:

A mark shall be deemed to be "abandoned" if either of the following occurs: (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

SAirGroup has not used the Mark for more than three years—since late March

**4.** In the past, some had proposed that "comity" be eliminated as a separate factor, and included in the preamble to § 304(c). *See Treco*, 240 F.3d at 157 n.7. This change would reflect the view, endorsed by the *Treco* Court, that the decision whether to grant comity is the result of the application of the other factors. This suggestion was eventually adopted and incorporated into the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See* 11 U.S.C. § 1507(b).

2002—and this constitutes *prima facie* evidence of abandonment. The Trustee may be able to rebut the statutory presumption by showing that SAirGroup withdrew from the market for financial reasons, and has made continuous efforts to sell the Mark. *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980)(presumption of non-use of mineral water trademark rebutted by evidence of owner's withdrawal from the mineral water business and continuous marketing efforts to sell the business with its good will). The question of abandonment is fact-specific, *Seidelmann Yachts, Inc. v. Pace Yacht Corp.,* Civ. No. JH–87–3490, 1989 WL 214497, at *7 (D.Md. Apr. 26, 1989), and the Trustee acknowledges that the litigation will be time consuming and costly. (*See Supplemental Declaration,* ¶ 8.)

For this reason, the Trustee prefers to sell the Mark before his rights are litigated. The Trustee is not seeking to stay the USPTO so that this Court or another court can determine the issue. He is not suggesting that the Swiss court could or would determine this question of United States trademark law. Rather, his entire argument turns on his view that the issue should *not* be decided by any court, at least while the SAirGroup estate can sell its rights. In the end, the motion is based on the Trustee's business judgment that it is better to sell a "pig in a poke," than to determine SAirGroup's interest in the Mark, and then sell (or abandon) it.

■ The Court takes no issue with the Trustee's business judgment, but § 304 runs in the opposite direction.[5] The threshold question of ownership must be resolved before considering the propriety of relief under § 304(b). The Court cannot grant a § 304(b) injunction to prevent the determination of a *bona fide* threshold issue of ownership simply because the foreign representative thinks that it makes better business sense not to decide the question.

■ This leaves for consideration who will decide the question. Ordinarily, this Court would make the preliminary determination under local law regarding SAirGroup's interest in the Mark. *See Koreag,* 961 F.2d at 349. In this case, however, I defer to the USPTO for several reasons. First, the Petition to cancel is currently pending before that forum. The issue of abandonment falls squarely within its area of expertise. Second, no party, including the Trustee in particular, has asked this Court to decide the question; to the contrary, the Trustee does not want to litigate the issue at all. Third, even if it were otherwise appropriate for this Court to decide the threshold question, the outcome will be governed by the Lanham Act, and proceedings in this Court would likely be subject to mandatory withdrawal of the reference. *See* 28 U.S.C. § 157(d).

Accordingly, the Trustee's motion for injunctive relief is denied. Settle order on notice.

---

5. The Trustee's business judgment does not constitute proof of the harm that would befall the estate if the injunction is denied. To the contrary, a potential buyer of the Mark would presumably discount the purchase price by the costs and uncertainties of the Petition litigation. An injunction may delay but will not eliminate the need to litigate the underlying dispute. I note, in this regard, that after marketing the Mark for at least two years, the Trustee received an offer of only $4 million in August 2005, before SIAL even filed the Petition. In short, the evidence does not support a finding that the Mark is particularly valuable, or that its value will be affected by the continuation of the Petition litigation.