In re Petition of Zoran **MILOVANOVIC, as Liquidator of Jugoscovenska Izovzna I Kreditna Banka a/k/a Jik Banka, a/k/a Yugoslav Export & Credit Bank, Debtor in Foreign Proceedings.**

No. 03–40940 (ALG).

United States Bankruptcy Court, S.D. New York.

Nov. 30, 2006.

because plaintiff did not demonstrate that defendant had actual knowledge of summons and complaint); *Finamar Investors,* 889 F.Supp. at 117 (noting that "[s]everal courts have upheld service where the serving party 'substantially complied' with the requirements of the FSIA if actual notice was received....").

**58.** *Sherer,* 987 F.2d at 1249.

Healy & Baillie, LLP, by Jeremy J.O. Harwood, Jack A. Greenbaum, New York, NY, for Petitioner.

Barnes & Thornburg, LLP, by Kevin C. Driscoll, Michael B. Watkins, Chicago, IL, for Nugent Establishment Industrie F.L.

### MEMORANDUM OF DECISION AND ORDER

ALLAN L. GROPPER, Bankruptcy Judge.

Jugoscovenska Izovzna i Kreditna Banka, a/k/a JIK Banka, a/k/a Yugoslav Export & Credit Bank (the "Debtor") was a bank organized in the former Federal Republic of Yugoslavia, now the Republics of Serbia and Montenegro. Pursuant to local insolvency law, the Debtor was placed into liquidation proceedings on July 26, 2000, and on December 29, 2000, Zoran Milova-

novic (the "Petitioner") was appointed as the Debtor's liquidator by the Commercial Court of Belgrade. On April 17, 2003, acting in that capacity, Milovanovic filed a petition under § 304 of the Bankruptcy Code, seeking recognition of the foreign insolvency proceeding and an injunction to restrain the disposition of approximately $848,000 in the United States allegedly belonging to the Debtor.[1] The Petitioner also sought to have those funds and any other property of the Debtor in the United States transmitted abroad for administration in the foreign insolvency proceedings.

The § 304 petition was opposed by Nugent Establishment Industrie, F.L. ("Nugent"), a Lichtenstein corporation that had obtained a default judgment from the New York Supreme Court against JIK Banka in 1998 in the amount of approximately $2,500,000. It is not contested that Nugent's judgment was based on a letter of credit that JIK Banka had failed to honor, apparently because on May 30, 1992, the President of the United States blocked the property in the United States of all nationals of what was then the Federal Republic of Yugoslavia. (Nugent Mem. of Law p. 3, citing Executive Order 12808.) In February 2003, when the freeze was lifted, Nugent executed on the judgment, and the Debtor's funds on deposit in the United States were garnished by the New York City Sheriff. (Nugent Resp. to Petitioner's Statement of Material Facts, ¶ 5.) This § 304 proceeding followed, and the funds were placed in the registry of this Court pending further proceedings.

Nugent opposed the § 304 petition on grounds that Milovanovic was not a valid "foreign representative," as defined in § 101(24) of the Bankruptcy Code, and that Serbian law was not entitled to recognition under § 304. On November 26, 2003, this Court issued a written decision finding that the Petitioner was entitled to recognition as the foreign representative of the Debtor and that further proceedings would be required in order to apply the factors set forth in § 304 and determine whether the proceedings in Belgrade were entitled to recognition.

There is now before the court a motion for summary judgment on the § 304 issues filed by a successor to the original petitioner. Nugent opposes the motion and seeks dismissal of the § 304 petition entirely, or, in the alternative, for the Court to continue the status quo pending further factual determinations. (Resp. to Mot. For Summ. J. at 15.) Nugent makes three arguments in opposition to the motion for summary judgment.[2]

1. Since this case was filed before October 17, 2005, § 304 applies, rather than Chapter 15, adopted pursuant to the Bankruptcy Abuse and Prevention Act of 2005. *See In re Wuthrich*, 337 B.R. 262, 267 n. 3 (Bankr.S.D.N.Y. 2006).

2. Nugent does not argue that summary judgment is not an appropriate procedure for granting § 304 relief. It has been used in this fashion. *See In re Hackett*, 184 B.R. 656 (Bankr.S.D.N.Y.1995). The principles that govern summary judgment motions are also well-known. In accordance with Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interroga-

tories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Morenz v. Wilson–Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr.S.D.N.Y.1993). When a court considers a motion for summary judgment, it must resolve all ambigui-

*The Petitioner's Status as "Foreign Representative"*

█Nugent's first point is that the original petitioner herein, Zoran Milovanovic, has been replaced and that the insolvency proceedings in Belgrade have changed from a liquidation to a bankruptcy.

There is no dispute that Milovanovic was replaced as liquidator, and there is no real dispute that he was succeeded, first by an individual named Zivulovic, and then, due to a change in the law, by two governmental agencies, initially the Agency for Deposit Insurance, Rehabilitation, Bankruptcy and Liquidation of Banks and then by the Agency for Deposit Insurance.[3] However, aside from raising the issue and expressing uncertainty as to the identity of the Petitioner, Nugent did not contravene the showing made on behalf of the Petitioner that the Agency for Deposit Insurance is now the insolvency representative for the Debtor, and the succession has been fully explained in the declarations of Miulorad Dzambic, sole director of the Agency for Deposit Insurance, and Luka Andric, a Serbian attorney. In its initial response to the § 304 petition, Nugent also attempted to raise issues as to the capacity of the liquidator as foreign representative, and these were rejected in the Court's prior opinion. Nugent's vague contentions of uncertainty do not raise a triable issue of fact on this record, especially as Nugent has fully participated in the Serbian insolvency proceedings and has had its claim recognized there.

█ Nugent also points out that the title to the proceedings in Belgrade has changed from "liquidation" to "bankruptcy" and that the Agency for Deposit Insurance is now a bankruptcy administrator. As Serbian law was explained in the Andric Declaration, a liquidation proceeding is converted to a bankruptcy case when it is known that the debtor has insufficient funds to provide a 100% recovery to its creditors. (Andric Decl. at 3.) The fact that liquidation may follow other proceedings is well-known in American bankruptcy law, where reorganization proceedings may be converted to a chapter 7 liquidation for many reasons. *See, e.g.,* 11 U.S.C. § 1112. The fact that the proceedings have been converted provides no reason for refusing to recognize the ongoing case in Belgrade. The Court will order the substitution in connection with the final § 304 order in accordance with § 304(b)(3), which permits the Court to grant "other appropriate relief," and (by analogy) Bankruptcy Rule 2012, which provides for the automatic substitution of a successor trustee when a trustee ceases to hold office during a case under the Bankruptcy Code.

*Treatment of Letters of Credit under Serbian Law*

█ Nugent's second objection is that Serbian law should not be afforded recog-

---

ties and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1318 (2d Cir.1975); *see also Ames Dep't Stores, Inc.,* 161 B.R. at 89. However, a party opposing a motion for summary judgment cannot rest on its pleadings but must provide evidence to support the essential elements of its case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *DePippo v. Kmart Corp.,* 335 B.R. 290, 294–95 (S.D.N.Y.2005), citing *Matsushi-*

*ta Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**3.** The Agency for Deposit Insurance, Rehabilitation, Bankruptcy and Liquidation of Banks was recognized as a foreign representative in another § 304 case. *See In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks,* 310 B.R. 793 (S.D.N.Y.2004), *reconsideration denied,* 313 B.R. 561 (S.D.N.Y. 2004).

nition by means of an order under § 304 because it does not appropriately treat letters of credit. (Resp. to Mot. for Summ. J. at 8–11.) Therefore, Nugent contends, § 304(c)(1), which requires "just treatment of all holders of claims," would not be satisfied if the funds in the United States were repatriated to Serbia. Nugent relies upon *Murphy v. FDIC,* 38 F.3d 1490 (9th Cir.1994), to support its contention that letters of credit must be treated preferentially in an insolvency proceeding. In *Murphy,* a U.S. bank issued, possibly illegally, a letter of credit. 38 F.3d at 1501. When the bank subsequently failed, the Court held that the possibility of illegality did not void the letter of credit since, among other things, its beneficiary was not aware of any wrongdoing. *Murphy,* 38 F.3d at 1503. However, the court in *Murphy* did not hold that letters of credit receive a priority payout in a bank insolvency proceeding or a Bankruptcy Code proceeding; rather, it held that "a letter of credit remains enforceable despite irregularities in the underlying transaction." *Id.* at 1502. Nugent has cited no authority that the beneficiary of a letter of credit issued by an insolvent entity has a priority claim on the assets of that entity.

The Court recognizes the fundamental role letters of credit play in international business transactions. However, Nugent has provided no support for its contention that it deserves priority on its letter of credit claim. Serbian law should not be refused recognition because it fails to afford a priority that would not be generally recognized under the Bankruptcy Code or under the insolvency laws of the United States. Nugent's second ground for opposition to the grant of summary judgment to Petitioner is rejected.

*Principles of Fairness and Due Process*

█ Nugent's final argument is that the procedures governing the Debtor's liqui-dation in Serbia violate principles of fairness and due process and should therefore not be recognized under § 304(c). Specifically, Nugent contends that Serbian law lacks (i) the principle of equitable subordination, (ii) proper notice to creditors, (iii) procedures to prevent undue delay, and (iv) a right to a substantive appeal.

Nugent relies upon *Interpool Ltd. v. Certain Freights,* 102 B.R. 373 (D.N.J. 1988), as support for its argument that Serbia's lack of the principle of equitable subordination and individualized notice procedures provides a basis for denial of § 304 recognition. The court in *Interpool* denied recognition under § 304 to an Australian proceeding, and sustained a competing Chapter 7 petition filed in the United States, on the grounds, among others, that Australian insolvency law lacks equitable subordination principles and certain notice procedures. *Interpool,* 102 B.R. at 378–79. However, *Interpool* has been soundly and properly criticized. *See* Westbrook, *Theory and Pragmatism in Global Insolvencies: Choice of Law and Choice of Forum,* 65 Am. Bankr.L.J. 457, 474–78 (1991). First, as Professor Westbrook demonstrates there, the denial of § 304 recognition in *Interpool* on the ground that the Liquidator's arrangement with a large creditor might have been treated differently under U.S. law, and U.S. creditors might have been better off, was unjustified. As Westbrook argues, if a different outcome were alone enough to deny § 304 recognition, "this reading of *Interpool* would make § 304 a dead letter." *Id.* at 475. Second, the Court expressed concern in *Interpool* that an *ex parte* agreement had been reached between the Liquidator and the creditor and approved by the Australian court without prior notice to creditors. However, this resulted from the fact that Australian law enhances a liquidator's ability to take action without notice to

creditors and thereby promotes speed, efficiency, and cost-reduction. The U.S. may favor more transparency at greater expense, but as Westbrook contends, this cannot be said to be the *right* balance under § 304. *Id.* at 476. In any event, *Interpool* also involved claims of insider dealing that directly raised the possibility of equitable subordination and called into dispute a specific arrangement agreed to by the Liquidator without notice to creditors. 102 B.R. at 379. There has been no suggestion here that insider dealing is at issue or that the doctrine of equitable subordination would be relevant here or that the Liquidator in Serbia has agreed to an *ex parte* arrangement involving Nugent. The facts here are inapposite to those in *Interpool,* and this Court declines to extend *Interpool* to cover the present case.

Nugent supports its claim that the absence of proper notice procedures precludes recognition of the Serbian proceeding by citing the fact that Serbian law only requires that notice to creditors be posted in the courthouse and published in a local newspaper. However, § 304 does not require that any specific form of notice be provided to creditors. Rather, it requires this Court to consider the "just treatment" of claim holders, § 304(c)(1), whether U.S. creditors are protected against prejudice and inconvenience, § 304(c)(2), and whether the distribution of proceeds is "substantially in accordance" with the Bankruptcy Code, § 304(c)(4). The pleadings submitted by the Petitioner in response to Nugent's argument on the issue of notice demonstrates that there are adequate procedures to inform creditors of the liquidation and that the proceedings are open and not filed in secret. Moreover, there is no dispute that Nugent received actual notice of the insolvency proceeding in Serbia, and in fact filed one or more proofs of claim with the Serbian court.[4] (Reply Mem. of Law in Supp. of Petitioner's Mot. for Summ. J. at 7.) There is authority that an individual creditor should not be able to oppose the grant of comity by raising abstract notice deficiencies in foreign law that do not affect its personal rights. *See Finanz AG Zurich v. Banco Economico,* 192 F.3d 240, 249 (2d Cir.1999), citing *Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 458 (2d Cir.1985). The Court in *Bank of New York v. Treco (In re Treco),* 240 F.3d 148 (2d Cir.2001), also addressed issues of fundamental fairness of process in the § 304 context. In *Treco,* the Court refused to grant a § 304 petition and order the turnover of funds to a Bahamian proceeding in light of the harm that would have been inflicted on the Bank of New York, if it were a secured creditor. *Id.* at 161. However, the Court did not hold that the foreign proceeding should be denied any recognition, and the Court treated the issue of turnover on an individualized basis based on the premise that the bank in fact had a secured claim.

Nugent cites *In re Hourani,* 180 B.R. 58, 65 (Bankr.S.D.N.Y.1995), where the Court denied a § 304 petition that sought recognition of a Jordanian bank insolvency proceeding and expressed concern about "the lack of procedural and substantive safeguards" in the relevant Jordanian law. There, the Court was disturbed by a liquidation committee's unfettered discretion, and affidavits from Jordanian lawyers relied upon by the Court were replete with descriptions of a proceeding that lacked a statutory or common-law framework, with unappealable decisions made confidentially by a liquidation committee. *Id.* at 66–68.

---

**4.** In fact, Petitioner has agreed to recognize Nugent's claim, and it has been entered against the estate in the foreign proceeding.

There is no allegation in this case that the proceedings in Serbia have been kept secret from the creditors, and there is a governing body of Serbian law that satisfies the criteria of § 304. Moreover, as discussed below, there is a right to appeal decisions made in the proceeding. *Hourani* is not controlling in this case.

Nugent also claims that there has been undue delay in the Serbian proceedings in that the case has been underway for approximately six years without payment to creditors. (Resp. to Mot. for Summ. J. at 12–13.) However, all Nugent alleges is delay, not undue delay. As Petitioner has indicated, the liquidators have spent years litigating and administering claims filed against the estate and undertaking other actions necessary for the liquidation. (Reply Mem. of Law in Supp. of Petitioner's Mot. for Summ. J. at 8–9.) The allegation of undue delay is unsupported by the record and cannot justify the further delay that would result from denial of Petitioner's motion for summary judgment.

Nugent finally asserts that Serbian law provides only a "limited" substantive right to appeal the decisions of a bankruptcy court. (Resp. to Mot. for Summ. J. at 13.) In the first place, a right to appeal is not constitutionally mandated even in the United States. *See Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Moreover, although procedurally different from the United States appellate process, there is a Serbian right of appeal. (Andric Decl. at 7.) For example, the prospective appellant can initiate a plenary lawsuit on the issue to be appealed, or the bankruptcy panel can instruct the bankruptcy administrator to initiate the lawsuit. *Id.* Furthermore, the Serbian court has recognized Nugent's claim, rendering Nugent's concern about a "limited" right of appeal hypothetical.

*Nugent's Further Correspondence*

In a letter to the Court dated August 3, 2006, counsel for Nugent makes several further arguments against granting the § 304 petition. Among other things, Nugent alleges that the Serbian proceeding is unfair because the "Governor of the National Bank ignored the Federal [C]ourt's decision" concerning revocation of the Debtor's license. (Aff. of Srdjan Josimov at 2.) This argument echoes the contentions already made by Nugent and addressed in this Court's November 2003 Opinion. At that stage of this case, Nugent asserted that even if the National Bank had the power to enter a second order of liquidation, the order was rendered ineffective due to the National Bank's failure to follow appropriate procedures. However, this Court found sufficient evidence on the record to show that the Debtor was in a liquidation proceeding notwithstanding the alleged procedural deficiencies. Nugent's current rendition of its past contentions is again rejected.

Another argument raised by Nugent is that it might be a secured creditor. As Nugent's papers are unclear as to the source of its security interest, the Court addresses the two possibilities. First, Nugent might argue that it holds a secured claim in the United States since it has caused funds of JIK Banka to be executed upon by the New York City Sheriff. However, there is no dispute that Nugent executed upon these funds in 2003, well after the liquidation was filed in 2000. Just as the automatic stay under 11 U.S.C. § 362(a) precludes creditors from attaching property after a bankruptcy filing, Serbian law generally prevents creditors from attempting to collect on a pre-existing debt or to enforce a security interest after the commencement of a bankruptcy proceeding. (Decl. of Radomir Milosevic at ¶ 20.) Under the circumstances of this case, this

Court is not required to recognize an attachment that would be void under applicable foreign law. *See Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 457 (2d Cir.1985), where the Court voided Cunard's attachment of the Debtor's property in the United States in deference to an earlier commenced Swedish bankruptcy proceeding.

Nugent's alternative ground for attaining secured creditor status would be through a process in Serbia initiated by Nugent's Serbian counsel to attain a "third-party right ... secured by the mortgage." (Aff. of Predrag Pantelic at 2.) Nugent is of course free to pursue all of its rights and claims in the Serbian court, including its right to claim secured status. However, the possibility that Nugent might be considered a secured creditor by a Serbian court applying Serbian law is hardly a ground for sustaining Nugent's objection to the § 304 petition. The § 304 order will specifically reserve Nugent's right to claim that it is a secured creditor under Serbian law.

■ As Nugent itself admits, § 304 does not require foreign law to mirror United States law. (Resp. to Mot. for Summ. J. at 10.); *see also Hourani,* 180 B.R. at 65; *In re Garcia Avila,* 296 B.R. 95, 109, 111–112 (Bankr.S.D.N.Y.2003). Rather, this Court needs to consider the requirements of § 304 while taking into account that "comity is the ultimate" factor in a § 304 analysis. *Treco,* 240 F.3d at 156. Nugent has not shown Serbian law to be offensive to U.S. law, and Petitioner has adequately demonstrated that there is no triable issue of fact. Petitioner's motion for summary judgment is granted, with the funds to be released to Petitioner for delivery to the Debtor's Serbian estate for distribution in accordance with Serbian

law. Petitioner should settle an order on five days' notice.